# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND124

| | |
|---|---|
| Great Plains Royalty Corporation,<br>a North Dakota Corporation, | Plaintiff and Appellant |
| v. | |
| Earl Schwartz Company,<br>a North Dakota partnership,<br>Basin Minerals, LLC, a North Dakota<br>limited liability company, SunBehm Gas, Inc.,<br>a North Dakota corporation, and<br>Kay Schwartz York, Kathy Schwartz Mau,<br>and Kara Schwartz Johnson, as the<br>Co-Personal Representative of the<br>Estate of Earl N. Schwartz, | Defendants and Appellees |

No. 20180285

Appeal from the District Court of McKenzie County, Northwest Judicial District, the Honorable Daniel S. El-Dweek, Judge.

REVERSED AND REMANDED.

Opinion of the Court by McEvers, Justice.

Daniel H. Oster (argued) and James J. Coles (appeared), Bismarck, ND, for plaintiff and appellant.

Spencer D. Ptacek (argued) and Lawrence Bender (appeared), Bismarck, ND, for defendants and appellees Earl Schwartz Company, a North Dakota partnership, Basin Minerals, LLC, a North Dakota limited liability company, Kay Schwartz York, Kathy Schwartz Mau, and Kara Schwartz Johnson, as the Co-Personal Representative of the Estate of Earl N. Schwartz.

Jordan L. Selinger (argued) and Jon Bogner (appeared), Dickinson, ND, for defendant and appellee SunBehm Gas, Inc., a North Dakota corporation.

**McEvers, Justice.**

[¶1]     Great Plains Royalty Corp. appeals from a judgment dismissing its complaint and deciding ownership of certain real property in favor of Earl Schwartz Co. ("ESCO"); Basin Minerals, LLC; SunBehm Gas, Inc.; and other defendants. Great Plains argues the district court erred in deciding ownership of the disputed properties in favor of the defendants. We reverse and remand.

I

[¶2]     In 1968, Great Plains' creditors initiated a bankruptcy case by filing an involuntary petition under Chapter 11 of the Bankruptcy Code. Myron Atkinson was appointed trustee for the bankruptcy estate, the bankruptcy court ruled Great Plains was "a bankrupt," and the case was converted to a liquidation proceeding under Chapter 7 of the Bankruptcy Code. The trustee received permission to sell the estate's assets, an auction sale was held, and Earl Schwartz was the winning bidder. An order confirming sale of the assets was entered, and an amended order was later entered. The order stated Schwartz entered into an agreement with SunBehm to purchase certain properties in the bankruptcy estate, and title was transferred on those properties directly from the estate to SunBehm. The trustee did not collect sufficient funds from the auction to pay all creditors in full. The bankruptcy case was closed in 1974.

[¶3]     In 2013, the bankruptcy case was reopened, and a successor trustee was appointed. The successor trustee collected funds sufficient to pay "a 100 percent dividend" to the estate's creditors, and he attempted to disburse the funds to the unpaid creditors. While the case was open various adversary proceedings were brought, including some to determine ownership of certain properties. Some of the adversary proceedings were decided, and others were dismissed for lack of

1

jurisdiction. The bankruptcy court discharged the trustee and closed the bankruptcy case in May 2016.

[¶4] In December 2016, Great Plains sued ESCO, Basin, and SunBehm to quiet title to oil, gas, and other minerals in and under three properties located in McKenzie County. ESCO and Basin are successors in interest to Schwartz. The properties are certain oil, gas, and other minerals and interests in and under land in McKenzie County described as:

> Property No. 1:
> <u>Township 153 North, Range 95 West</u>
> Section 7: S1/2 SE1/4 and NW1/4 SE1/4
> Section 8: S1/2 SE1/4 and SW1/4 SW1/4
> Section 17: N1/2 NE1/4
>
> Property No. 2:
> <u>Township 152 North, Range 96 West</u>
> Section 24: NW1/4
>
> Property No. 3:
> <u>Township 152 North, Range 95 West</u>
> Section 16: NW1/4

SunBehm answered and counterclaimed, requesting the district court quiet title to 1/320ths mineral interest in Property No. 1 in its favor. ESCO and Basin answered and counterclaimed, requesting the court quiet title and declare they own 100 percent of the minerals, royalties, and other interests in and under Property Nos. 1, 2, and 3, and ten additional described properties (collectively "subject properties") that were owned by Great Plains at the time the bankruptcy petition was filed in 1968.

[¶5] In July 2017, Great Plains moved to amend its complaint and to add party defendants, requesting Kay Schwartz York, Kathy Schwartz Mau, and Kara Schwartz Johnson, as the co-personal representatives of the estate of Earl Schwartz be added as defendants. Great Plains also stated it wished to withdraw any and all claims to Property No. 1 and admitted it had no interest in the property. The district court granted Great Plains' motion. An amended complaint adding the Schwartz estate defendants and withdrawing all claim to Property No. 1 was filed. The amended complaint also added claims of slander of title and conversion related to Property Nos.

2

2 and 3. SunBehm answered the amended complaint and counterclaimed, requesting the court quiet title in Property No. 3 in its favor. ESCO, Basin, and the personal representatives of the Schwartz estate (collectively "Schwartz defendants") filed an amended answer.

[¶6] A bench trial was held in January 2018. During the trial, Great Plains moved to amend its answer to the Schwartz defendants' counterclaim. Great Plains requested the district court allow it to amend its answer to request the court quiet title in its favor in all of the subject properties the Schwartz defendants listed in their counterclaim, which included the ten additional properties. The court denied Great Plains' motion, but stated the motion could be renewed at some point. At the close of evidence, Great Plains renewed its motion. The Schwartz defendants objected, arguing they would have presented different evidence if they knew Great Plains was claiming an interest in all of the subject properties. Great Plains filed a brief in support of its motion. The Schwartz defendants opposed the motion. The court denied Great Plains' motion to amend.

[¶7] On May 17, 2018, the district court entered its findings of fact, conclusions of law, and order for judgment. The court found the parties to the bankruptcy proceeding and sale of the bankruptcy estate intended to sell all of Great Plains' assets. The court declared that "one hundred percent (100%) of the minerals, royalties, and other interests in and under the Subject Properties that belonged to Great Plains at the time the bankruptcy petition was filed in 1968, with the exception of that portion comprising Property No. 3, are now owned by ESCO and Basin," and the court quieted title in those properties. The court declared that "one hundred percent (100%) of Property No. 3 that belonged to Great Plains at the time the bankruptcy petition was filed in 1968 is now owned by SunBehm" and quieted titled to that property in favor of SunBehm. The court also dismissed Great Plains' amended complaint with prejudice. Judgment consistent with the order was entered.

II

3

[¶8] In an appeal from a bench trial, this Court reviews the district court's findings of fact under the clearly erroneous standard. *W. Energy Corp. v. Stauffer*, 2019 ND 26, ¶ 5, 921 N.W.2d 431. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if this Court is convinced, based on the entire record, that a mistake has been made. *Id.* The district court's conclusions of law are fully reviewable. *Id.*

III

[¶9] Great Plains argues the district court erred by finding the bankruptcy trustee intended to sell all of Great Plains' assets, including those not listed in the auction sale notice, to Earl Schwartz.

A

[¶10] Great Plains contends the doctrines of estoppel and res judicata bar the defendants' claims because the bankruptcy court already decided issues raised before the district court. Great Plains asserts ESCO and Basin were the defendants in bankruptcy adversary proceedings, the central issue in one of the adversary proceedings was what did Earl Schwartz purchase from the bankruptcy estate in 1969, and the doctrine of issue preclusion bars the defendants from re-litigating the issue of the trustee's intent at the bankruptcy sale auction.

[¶11] "The doctrines of res judicata and collateral estoppel bar courts from relitigating claims and issues in order to promote the finality of judgments, which increases certainty, avoids multiple litigation, wasteful delay and expense, and ultimately conserves judicial resources." *Hector v. City of Fargo*, 2014 ND 53, ¶ 7, 844 N.W.2d 542 (quoting *Ungar v. N.D. State Univ.*, 2006 ND 185, ¶ 10, 721 N.W.2d 16). Whether res judicata or collateral estoppel applies is a question of law, which is fully reviewable on appeal. *Estate of Pedro v. Scheeler*, 2014 ND 237, ¶ 10, 856 N.W.2d 775.

4

[¶12] "Res judicata, or claim preclusion, prevents relitigation of claims that were raised, or could have been raised, in prior actions between the same parties or their privies." *Kulczyk v. Tioga Ready Mix Co.*, 2017 ND 218, ¶ 10, 902 N.W.2d 485 (quoting *Missouri Breaks v. Burns*, 2010 ND 221, ¶ 10, 791 N.W.2d 33). "Res judicata means a valid, final judgment from a court of competent jurisdiction is conclusive with regard to claims raised, or claims that could have been raised, as to the parties and their privies in future actions." *Kulczyk*, at ¶ 10. Res judicata applies even if subsequent claims are based on a different legal theory. *Hector*, 2014 ND 53, ¶ 7, 844 N.W.2d 542.

[¶13] Collateral estoppel is a branch of the broader law of res judicata, but it is not the same. *Hector*, 2014 ND 53, ¶ 7, 844 N.W.2d 542. "[C]ollateral estoppel, or issue preclusion, generally forecloses the relitigation, in a second action based on a different claim, of particular issues of either fact or law which were, or by logical and necessary implication must have been, litigated and determined in the prior suit." *Norberg v. Norberg*, 2017 ND 14, ¶ 9, 889 N.W.2d 889. We have said an issue must satisfy a four-part test for collateral estoppel to bar relitigation of the issue:

> (1) Was the issue decided in the prior adjudication identical to the one presented in the action in question?;
> (2) Was there a final judgment on the merits?;
> (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?; and
> (4) Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Id.* at ¶ 12 (quoting *Riemers v. Peters-Riemers*, 2004 ND 153, ¶ 9, 684 N.W.2d 619).

[¶14] To meet the first part of the test the court must determine whether the factual issues in the current case are identical to the factual issues in the prior case and "'ascertain what facts were necessarily decided in the prior action with regard to the issue' and then 'determine if [the non-movant] is attempting to relitigate those facts.'" *Norberg*, 2017 ND 14, ¶ 13, 889 N.W.2d 889 (quoting *State v. Lange*, 497 N.W.2d 83, 86 (N.D. 1993)). "[T]he first step is to determine whether 'identical factual

5

allegations' are at stake in the two proceedings, and then to ascertain whether the facts were 'necessarily decided.'" *Norberg*, at ¶ 13.

[¶15] In this case, the district court found it was the intent of the parties to the bankruptcy proceeding and sale to sell all of Great Plains' assets. The court explained:

> Based on the evidence and the arguments presented by the parties in this case, the Court is effectively faced with two possible outcomes: 1) that [Great Plains] managed to somehow retain interests in property over forty years after it was liquidated in bankruptcy and nearly thirty years after it was involuntarily dissolved by the North Dakota Secretary of State; or 2) that the bankruptcy trustee sold the entire estate to Earl Schwartz/ESCO. The only conclusion that makes sense in this case is that everything owned by [Great Plains] was sold in 1969 by the bankruptcy trustee to Earl Schwartz/ESCO. Accordingly, as explained below, the Court concludes that it was the intent of the parties to the bankruptcy proceeding and sale to sell all of [Great Plains'] assets to Earl Schwartz at the June 5, 1969 sale.

The court found the bankruptcy trustee was appointed for the purpose of liquidating Great Plains' entire estate, the report of sale and order confirming sale indicate that Earl Schwartz purchased "all of the assets" of Great Plains, and it was the trustee's and Earl Schwartz's intent to sell and buy all of the assets Great Plains held at the time of the bankruptcy. The court further found that even if the parties were uncertain about whether all of the assets had been located, the sale of the assets "as is" rendered any uncertainty moot because a purchaser would understand that its purchase included the risk that the interest conveyed may be greater or lesser than that identified in the notice of sale. The court concluded, "all of the assets of [Great Plains], including Property No. 2 and Property No. 3, passed by sale to Earl Schwartz in 1969."

[¶16] In bankruptcy adversary proceeding no. 13-07018, the bankruptcy court found Great Plains initiated the adversary proceeding in October 2013 seeking declaratory relief regarding the legal status of certain disputed assets. The court also found ESCO and Basin filed a counterclaim requesting the court enter a judgment declaring the disputed assets were sold to Earl Schwartz and also seeking a declaration that "the Trustee intended to, and did in fact, sell and convey any and all of Great Plains' assets

6

to Schwartz and that Great Plains has no interest in any property it owned prior to the commencement of the bankruptcy proceeding." The court said one of the issues Great Plains raised in its motion for partial summary judgment was "whether the Trustee offered all of the estate's assets for sale in June 1969." On October 1, 2014, the court granted summary judgment in favor of Great Plains on that issue, explaining:

> ESCO and Basin concede in their brief opposing the motion for partial summary judgment that "some assets were apparently never found or sold by the Trustee. As a result, they presumably remain part of the bankruptcy estate and neither ESCO nor Basin claims any interest in them." In their brief, Defendants also state that "ESCO and Basin now concede they cannot demonstrate that 'all' assets once owned by the bankrupt corporation were assigned to ESCO." In support of its argument, Great Plains cites the Trustee Atkinson's deposition during which he testified that he never made representations that he was selling all assets owned by Great Plains. In addition, Great Plains cites the testimony of Robert Mau, who stated that he was aware, ten to twenty years ago, that there were other assets owned by Great Plains and not purchased by Schwartz during the administration of the bankruptcy case. This testimony, along with ESCO and Basin's admission that Schwartz did not purchase all of Great Plains assets, satisfies the Court that there is no genuine dispute as to any material fact on this issue. Great Plains' request for judgment on this issue is granted.

The bankruptcy court ordered, "Plaintiff Great Plains' Motion for Summary Judgment on ESCO and Basin's Counterclaim alleging that Defendants purchased 100% of the assets owned by Great Plains at the time the bankruptcy proceeding was commenced is GRANTED. This cause of action is dismissed."

[¶17] In both the bankruptcy adversary case and this case, the issue decided was whether Earl Schwartz purchased all the assets Great Plains owned when the bankruptcy proceeding began, including assets that were not listed in the notice of sale. The factual issue in this case is identical to the factual issue decided in the prior bankruptcy adversary proceeding. The facts were "necessarily decided" in the bankruptcy case. "For issue preclusion to apply, the issue must have been actually litigated and have been essential to the prior decision." *Norberg*, 2017 ND 14, ¶ 21, 889 N.W.2d 889 (quoting *Riverwood Commercial Park, L.L.C. v. Standard Oil Co.,*

7

*Inc.*, 2007 ND 36, ¶ 21, 729 N.W.2d 101). The bankruptcy court granted summary judgment in favor of Great Plains after finding that there were no genuine issues of material fact and that the trustee did not sell all of the assets Great Plains owned to Earl Schwartz. The bankruptcy court dismissed ESCO and Basin's counterclaim requesting the court declare Schwartz purchased one hundred percent of the assets Great Plains owned at the time the bankruptcy proceeding was commenced. The issue was actually litigated and was essential to the prior decision. The first test is satisfied.

[¶18] The second part of the test is whether there was a final judgment on the merits. Although the issue was decided on summary judgment, and an order deciding a motion for summary judgment generally is an interlocutory order, the bankruptcy court subsequently held a trial to determine ownership of specific property, and the bankruptcy court decided ownership of the property without revisiting the issue decided on summary judgment. The order granting summary judgment dismissed ESCO and Basin's counterclaim on this issue. There was a final judgment on the merits.

[¶19] The third part of the test requires us to determine whether the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication. ESCO and Basin were defendants in the bankruptcy adversary proceeding. They are also defendants in the current case. ESCO and Basin may be bound by the prior proceedings.

[¶20] The final part of the test requires us to determine whether ESCO and Basin were given a fair opportunity to be heard on the issue. ESCO and Basin filed a counterclaim in the bankruptcy adversary proceeding requesting declaratory judgment on the issue. Great Plains moved for summary judgment on the issue. ESCO and Basin were given a fair opportunity to be heard on the issue.

[¶21] All four parts of the test for collateral estoppel are satisfied as to ESCO and Basin. ESCO and Basin are bound by the bankruptcy court's decision whether or not collateral estoppel also bars SunBehm. *See* 50 C.J.S. *Judgments* § 1075 (2009)

8

(stating the presence of additional parties not included in the prior suit does not prevent the estoppel from binding those who were parties to the prior judgment). We conclude the district court erred by finding "it was the intent of the parties to the bankruptcy proceeding and sale to sell all of [Great Plains'] assets to Earl Schwartz at the June 5, 1969 sale" for purposes of ESCO and Basin's claims.

[¶22] To the extent Great Plains argues res judicata also applies, ownership of Property Nos. 2 and 3 were not decided in bankruptcy adversary proceeding 13-07018. However, res judicata bars Great Plains, ESCO, and Basin from relitigating any claims in this case to specific properties in which ownership was previously determined in the bankruptcy adversary proceedings involving these three parties.


B

[¶23] SunBehm is also a defendant in the current case, but it was not a party to the bankruptcy proceeding. If SunBehm is in privity with ESCO or Basin, collateral estoppel would also preclude a finding that the trustee sold all of Great Plains' assets to Schwartz for purposes of SunBehm's claims.

[¶24] This Court has adopted an "expanded" version of privity for collateral estoppel. *Ungar*, 2006 ND 185, ¶ 12, 721 N.W.2d 16. We have said, [P]rivity exists if a person is so identified in interest with another that he represents the same legal right." *Id.* (quoting *Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380, 384 (N.D. 1992)). This Court has also said:

> It has been held that all person are privies to a judgment who succeed to the estate, interest, or rights of property thereby adjudicated or affected where such succession was derived through or under one or other of the parties to the action, and accrued subsequent to the commencement of that suit or subsequent to the rendition of the judgment; and one is not a privy to a judgment where his succession to the rights of property thereby affected occurred previous to the institution of the suit.

*Bismarck Pub. Sch. Dist. No. 1 v. Hirsch*, 136 N.W.2d 449, 451-52 (N.D. 1965); *see also Gerrity Bakken, LLC v. Oasis Petroleum N. Am., LLC*, 2018 ND 180, ¶ 17, 915

9

N.W.2d 677 (stating "the privity doctrine cannot be applied if the rights to property were acquired by the person sought to be bound before the adjudication").

[¶25] In *Hirsch*, 136 N.W.2d at 454, this Court considered whether a third party had privity. In *Hirsch*, at 450, the parties disputed ownership of wood and steel bleachers located on a tract of land owned by Hirsch. Rose Mary Hassa sold the land on contract for deed to William Kirchmeier, Kirchmeier built the bleachers, the contract for deed was later cancelled, and Hassa became the sole owner of the land. *Id.* at 451. After the contract for deed was cancelled, Kirchmeier gave a chattel mortgage covering the bleachers, the company holding the mortgage foreclosed, and Hassa commenced an action against the company and Kirchmeier alleging she owned the bleachers because they were permanently affixed to her land. *Id.* Hassa was granted a temporary injunction restraining the company from removing the bleachers, but that action was subsequently dismissed with prejudice and no appeal was taken. *Id.* Later in a separate action Hirsch claimed he owned the bleachers because they were attached to the land, which he acquired from Hassa. *Id.* The district court held Hirsch was in privity with Hassa and res judicata applied and precluded Hirsch from asserting a claim of ownership of the bleachers. *Id.* at 450. This Court reversed the district court's decision on res judicata and held Hirsch was not in privity with Hassa. *Id.* This Court said Hirsch was not a party to the prior action and he was not in privity with Hassa because his succession to the rights of the property did not occur subsequent to the commencement of the Hassa action. *Id.* at 454. The Court also noted that applying the doctrine of collateral estoppel or res judicata cannot be defended on principles of fundamental fairness in the due process sense, nor can it be said that Hirsch was fully protected in the Hassa action. *Id.*

[¶26] The Court's decision and reasoning in *Hirsch* is consistent with other authorities. *See, e.g.*, 50 C.J.S. *Judgments* § 1099 (2009) (discussing privity in general and stating a party is not privy to a judgment when his right to the property thereby affected occurred prior to the institution of the suit); E.H. Schopler, Annotation, *Mutuality of Estoppel as Prerequisite of Availability of Doctrine of*

*Collateral Estoppel to a Stranger to the Judgment*, 31 A.L.R. 3d. 1044, 1061, § 3(a) (1970) (defining a "privy" as one who acquired an interest in the subject matter affected by the judgment through one of the parties after rendition of the judgment).

[¶27]  Here, the district court found ESCO purchased assets at the auction sale on June 5, 1969, and the purchase of Property No. 3 was subsequently assigned to SunBehm.  The court did not find the exact date the property was assigned to SunBehm, but there was evidence in the record SunBehm claimed an interest in Property No. 3 before the bankruptcy adversary proceeding commenced in 2013, including that Earl Schwartz agreed to assign certain properties to SunBehm at the time of the bankruptcy auction and that the properties were transferred directly from the bankruptcy estate to SunBehm.

[¶28]  Because SunBehm acquired any interest it has in Property No. 3 from ESCO before the bankruptcy adversary proceeding, it is not in privity with ESCO for purposes of collateral estoppel.  SunBehm is not precluded from arguing Schwartz purchased all of the assets Great Plains owned at the time of the bankruptcy, and we must consider Great Plains' remaining arguments about the district court's findings.

C

[¶29]  Great Plains argues the district court erred by finding the parties to the bankruptcy court proceeding and sale intended to sell all of Great Plains' assets. Great Plains claims it possessed record title, the evidence of the parties' intent is contrary to the court's finding, and the court disregarded the limiting terms in the notice of sale.

[¶30]  The district court found "it was the intent of the parties to the bankruptcy proceeding and sale to sell all of [Great Plains'] assets to Earl Schwartz at the June 5, 1969 sale."  The court explained:

> Bankruptcy courts have concluded that where property is advertised for sale "as is," the property conveyed will be that actually held by the trustee, whether or not such property is accurately described in a notice thereof.  *See Matter of A.H. - R.S. Coal Corp.*, 8 B.R. 455, 458 (Bankr. W.D. Pa. 1981).  In the present case, as noted above, the

11

Report of Sale and Petition for Order Confirming Sale, filed one day after the actual sale of [Great Plains'] property, as well as the Order Confirming Sale of Assets (Nunc Pro Tunc), filed within a month of the sale of [Great Plains'] property, both indicate that Earl Schwartz purchased "all of the assets" of [Great Plains], and that Atkinson was merely selling the interest of [Great Plains] "as is." These representations accord with the fact that Atkinson was appointed bankruptcy trustee for the purpose of liquidating [Great Plains'] estate in its entirety. Based on the foregoing, this Court concludes that it was the intent of Atkinson and Earl Schwartz to sell and buy, respectively, all of the assets held by [Great Plains] at the time of its bankruptcy during the sale occurring on June 5, 1969. But even if the parties were uncertain as to whether all of the assets of [Great Plains] had been located and properly noticed for sale, the sale of all [Great Plains'] assets "as is" rendered any such uncertainty moot insofar as any purchaser would thus have understood that its purchase of the assets of [Great Plains] included the risk that the interest conveyed may be greater or lesser than that identified in the Notice of Sale. Finally, given that Atkinson was tasked with liquidating [Great Plains'] estate in order to pay its creditors and that [Great Plains'] estate was closed in 1974 without having paid off all unsecured creditors, the Court can ascertain no appropriate reason for Atkinson to have deliberately withheld property from the sale to Earl Schwartz. Accordingly, all of the assets of [Great Plains], including Property No. 2 and Property No. 3, passed by sale to Earl Schwartz in 1969, as confirmed by the Referee's Order Confirming Sale of Assets (Nunc Pro Tunc).

[¶31] The evidence from the bench trial in this case does not support the district court's finding that the parties to the bankruptcy sale intended to sell all of Great Plains' assets, including those assets not listed in the notice of sale, to Earl Schwartz. Myron Atkinson, the trustee, testified in a deposition submitted as an exhibit at trial about the auction sale of the bankruptcy estate's assets. Atkinson testified a list of Great Plains' assets was compiled from Great Plains' business records, he and an attorney working on the bankruptcy estate decided it would be best to compile the list of assets from the business documents because they could not justify the cost to do a title search, they did their best to assemble a list of the assets, but they were concerned there were properties they had not identified.

[¶32] Atkinson testified he did not make any representations at the auction about anything other than the properties described in the advertised notice. Atkinson was

12

asked if there were any representations made to Earl Schwartz or ESCO "that what they were bidding on was all of the assets of Great Plains," and he responded, "No, absolutely not." He testified it was his intent to sell all of the assets that had been identified and were listed for sale, and it was his intention as trustee to transfer to Schwartz all of the assets that had been sold at the sale to Schwartz.

[¶33] Robert Mau, a partner in the ESCO partnership and an ESCO manager, testified during the trial that ESCO and Basin were not claiming Earl Schwartz purchased all of Great Plains' assets, ESCO and Basin conceded there were properties that were not listed in the bankruptcy estate, and they did not claim ownership of all of the assets Great Plains owned. Mau testified there were some assets the trustee did not find before the sale, and Schwartz only purchased all of the assets that were identified by the bankruptcy court and trustee, whether or not the descriptions of the assets were entirely correct and complete. He testified ESCO and Basin were not claiming any assets that were not identified at the time of the 1969 bankruptcy sale.

[¶34] The notice of the 1969 bankruptcy sale was published in various newspapers and the notice included a list of assets that would be sold at the auction. The trustee's report of sale and petition for order confirming sale from the bankruptcy proceeding stated that "the assets of the bankrupt estate were offered for sale" at the auction, that the notice of sale was published multiple times in various publications, that "in each of the above mentioned publications the entire list of the assets to be sold was published," and that the trustee was petitioning for "an order confirming the sale of all of the assets of Great Plains . . . to Earl Schwartz." The report also stated that it was announced at the auction "all sales of the property were 'as is'; that the Trustee warranted neither title nor condition of the property and that the Trustee was selling merely the interest of the bankrupt estate and no more." The trustee's report states the entire list of assets to be sold was published in various newspapers and all of the assets listed were sold to Schwartz. The bankruptcy court's order confirming sale of assets states, "[T]he Referee confirms the sale of all of the assets of the bankrupt corporation to Earl Schwartz[.]" A nunc pro tunc amended order confirming the sale

13

of assets was subsequently entered stating, "the Referee confirms the sale of all of the assets of the bankrupt corporation included in the Notice of Sale to Earl Schwartz[.]" SunBehm has not challenged the validity of the amended order on appeal. The language of the orders and the trustee's report, when considered together, indicate the trustee and court believed at the time of the sale that the assets listed in the notice of sale were all of Great Plains' assets, but the trustee and court did not intend to sell any assets that had not been identified and therefore were not listed.

[¶35] As part of the district court's analysis about the parties' intent, the court found that even if the parties were uncertain about whether all of the assets had been located and noticed for sale, the sale of the assets "as is" rendered any uncertainty moot. SunBehm argues the court properly concluded it was the parties' intent to sell all of Great Plains' assets because the property was advertised for sale "as is." SunBehm claims property advertised for sale "as is" includes all of the property held by the trustee whether or not it is accurately described in the notice of sale, the trustee had control of all of Great Plains' assets, the assets were sold at the auction "as is," and therefore the trustee sold all of the assets at the auction, including any unidentified assets.

[¶36] The district court cited *In re A.H. R.S. Coal Corp.*, 8 B.R. 455 (Bankr. W.D. Pa. 1981), in support of its analysis. In *A.H. R.S. Coal Corp.*, 8 B.R. at 456, the personal property sold at the bankruptcy sale was described as a "Lima 2400" shovel. The plaintiff alleged the bankruptcy sale advertisement listed the Lima shovel as model 2400, it received model 2000 instead, and parts of the shovel were stolen after the sale. *Id.* The bankruptcy court held the plaintiff failed to meet its burden of proving it was sold the 2000 model instead of the 2400 model. *Id.* at 458. The court further stated that even if the plaintiff had proven it received the 2000 model, it would not be entitled to recover because the advertisement was clear that the description was only based on what the debtor-in-possession believed was correct and that the defendant did not warrant the condition of the equipment, and the plaintiff inspected

14

the equipment before the sale and had an opportunity to inquire about the model number. *Id.*

[¶37]   This case is different from *A.H. R.S. Coal Corp.*  In *A.H. R.S. Coal Corp.*, the description of the personal property sold was alleged to be incorrect, but the actual property sold was included in the sale advertisement.  This case involves more than an incorrect description.  The district court found all the property owned by Great Plains was sold at the auction, including property that was not listed or described in the notice of sale.  The court found selling the property "as is" means property that was not described or identified in any way was included in the sale.  We disagree.  The term "as is" as it relates to real property generally refers to the condition of the property and relieves a seller of real property from defects in condition.  *See In re Landsource Communities, Dev. LLC*, 485 B.R. 310, 320 (D. Del. 2013).  The *A.H. R.S. Coal Corp.* case does not support SunBehm's argument or the court's finding that selling the assets "as is" rendered moot any uncertainty about whether all of the property had been located and identified.  The *A.H. R.S. Coal Corp.* case does not support the district court's interpretation of the "as is" clause, and the parties have not cited any other authorities that would support the district court's interpretation.

[¶38]   The evidence does not support the district court's finding that the parties to the bankruptcy sale intended to sell all of Great Plains' assets to Earl Schwartz at the auction sale, including property that had not been identified.  The court also misapplied the law in interpreting the "as is" clause.  We conclude the court's finding is clearly erroneous.

15

[¶39]   The district court alternately found, even if the parties did not intend to sell all of Great Plains' assets to Schwartz, Great Plains lost its ability to claim title to property when it was involuntarily dissolved by the North Dakota Secretary of State. The court explained that because Great Plains ceased to exist as a corporation as of August 1983, it was not capable of owning or possessing any property and therefore it could not presently own an interest in Property Nos. 2 and 3.  Great Plains argued it never lost title to the properties by virtue of a 2011 order for reinstatement issued by a Burleigh County district court.  However, the court in this case found the reinstatement order was not binding on the defendants here because none of the defendants were parties to the reinstatement action and ownership of Property Nos. 2 and 3 was not raised in the Burleigh County case.

[¶40]   Section 10-19.1-148, N.D.C.C., authorizes a district court to order reinstatement of a dissolved corporation.  The defendants allege, and Great Plains does not dispute, that the Secretary of State dissolved Great Plains in 1983 for failure to file its annual report and fees.  In September 2011, the district court in Burleigh County ordered reinstatement under N.D.C.C. § 10-19.1-148(4) and (5) based on the court's review of the petition for reinstatement and the admission of service and consent to reinstatement of the Secretary of State.  *See Great Plains Royalty Corp. v. Jaeger*, Case No. 08-2011-CV-01921 (N.D. Dist. Ct. 2011).  The court also ordered that, upon reinstatement, Great Plains would have all of the rights and privileges it would have possessed if it had properly and timely submitted all annual reports and fees.  The Secretary of State issued a certificate of good standing.

[¶41]   "In general, when a suspended or revoked corporation is reinstated or revived, its powers and privileges are restored retroactively to the date of the suspension or revocation, or nunc pro tunc, except as to those rights and assets of which the corporation was divested prior to the reinstatement or revival."  19 Am. Jur. 2d *Corporations* § 2481 (2019).  The corporation is treated as if it had never been dissolved.  *Id.*  If all rights the corporation held before dissolution are reinstated, then

16

the reincorporated corporation generally regains title to property it owned prior to the dissolution, except as to those assets transferred prior to the reinstatement.  *See* 19 Am. Jur. 2d *Corporations* § 2485 (2019).

[¶42]  The Burleigh County district court ordered Great Plains be reinstated and that Great Plains had all rights and privileges upon reinstatement that it would have possessed had it properly and timely submitted all annual reports and fees.  The Burleigh County district court's decision was not appealed and will not be reviewed in this appeal.  Under the Burleigh County district court's decision Great Plains regained any title to property it owned prior to the dissolution.  Therefore, the district court erred in finding Great Plains no longer had any interest in the disputed property because it was dissolved in 1983.

[¶43]  The district court in this case acknowledged that the Burleigh County district court ordered reinstatement, but the court stated that order was not binding on the defendants because they were not parties to the Burleigh County case.  The court said the decision of the Burleigh County district court is not binding on the defendants in the present action because "[t]o conclude otherwise would suggest that a court may, by virtue of a perfunctory, two-week proceeding, transplant property rights that a party abandoned over a quarter of a century ago, with no regard for the property's present possessor or condition."

[¶44]  The Burleigh County district court's decision did not decide ownership of Property Nos. 2 and 3; rather, the court only determined Great Plains should be reinstated, it should be treated as if it was never dissolved, and it regained any title it had before dissolution, except as to assets that were transferred before the reinstatement.  The district court erred to the extent its decision suggests the defendants could challenge the reinstatement.  "[A] statute addressing the reinstatement . . . of an administratively dissolved corporation does not extend statutory standing to third parties to challenge the general fitness of an applicant for reinstatement."  19 Am. Jur. 2d *Corporations* § 2479 (2019); *see also Pascarella v. Comm'r of Rev. Servs.*, 989 A.2d 1092, 1094-95 (Conn. App. Ct. 2010) (plaintiffs,

17

who were defendants against a corporation in an unrelated action, did not have standing to challenge the general fitness of the applicant for reinstatement of the corporation).

[¶45]  The district court erred in holding Great Plains lost its ability to claim title to any assets it owned because it was involuntarily dissolved and ceased to exist as a corporation.  We conclude the court's finding that Great Plains cannot establish a present interest in the property because the corporation was dissolved and the defendants were not a party to the reinstatement was induced by an erroneous view of the law and is clearly erroneous.

V

[¶46]  The district court's decision to quiet title in favor of the defendants is based on its misapplications of the law and findings that are not supported by the evidence.  We have considered the remaining issues and arguments and conclude they are either without merit or are unnecessary to our decision.  Because the court's findings are clearly erroneous, we reverse the district court's judgment deciding ownership of certain properties and dismissing Great Plains' complaint with prejudice.  We remand for further proceedings to determine the parties' claims and ownership of the properties consistent with this opinion.

[¶47]  Lisa Fair McEvers
        Daniel J. Crothers
        Jerod E. Tufte
        Jon J. Jensen
        Gerald W. VandeWalle, C.J.

18