# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 205

Robert M. Hall,
Plaintiff and Appellant

v.

Estate of John F. Hall and all unknown heirs,
devisees, sucessors, and creditors of Myles
Franklin Hall, Myles F. Hall, a/k/a Myles Hall,
deceased, and all other persons unknown claiming
any estate or interest in, or lien or encumbrance
upon, the property described in the Complaint,
Defendants

and

Deborah E. Hall, Leslie Hall,
a/k/a Leslie Hall Butzer,
Defendants and Appellees

## No. 20190169

Appeal from the District Court of Williams County, Northwest Judicial
District, the Honorable Benjamen J. Johnson, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by McEvers, Justice.

Zachary E. Pelham (argued), and Benjamin W. Keup (appeared), Bismarck,
ND, for plaintiff and appellant.

William C. Black, Bismarck, ND, for defendants and appellees.

**McEvers, Justice.**

[¶1]   Robert Hall appeals from a judgment entered in favor of the defendants Estate of John Hall; Deborah Hall; and Leslie Hall, aka Leslie Hall Butzer; (Hall defendants) in this action to quiet title to a non-participating royalty interest (NPRI) in certain real property.  We conclude the district court did not abuse its discretion in vacating a default judgment against John Hall.  However, because res judicata does not bar Robert Hall's claims, we conclude the court erred in granting summary judgment to the Hall defendants.  We affirm in part, reverse in part, and remand for further proceedings.

I

[¶2]   In 2018, Robert Hall commenced this quiet title action against the Hall defendants, seeking to quiet title to a 1.04% NPRI in certain real property.  He alleges the Hall defendants claim an ownership interest in the property that is adverse to him.  Robert Hall and the Hall defendants are the heirs of Myles Hall.  Robert Hall alleges he purchased the NPRI at issue from his father, Myles Hall, in 1988.

[¶3]   Myles Hall was the assignee in a 1953 assignment of oil and gas royalty, which conveyed the NPRI at issue in this case.  Robert Hall asserts that he purchased the NPRI from his father for $100 in cash in 1988, and that a notation and signature with a date at the bottom of the 1953 assignment of royalty was written by his father on the original assignment of royalty document.  Myles Hall died in February 1992 in Minnesota.  Probate proceedings were commenced in Minnesota, and Robert Hall was co-personal representative of the Estate.  No probate proceedings were commenced in North Dakota.

[¶4]   Although Myles Hall died in 1992, record title to the NPRI apparently remained in Myles Hall's name.  Robert Hall, as the personal representative in a Minnesota probate of his father's estate, successfully defended a 2011 quiet title action against the Estate of Myles Hall that the surface owners of

the real property brought under North Dakota's abandoned mineral statutes, N.D.C.C. ch. 38-18.1 (sometimes referred to as termination of mineral interest act or as dormant mineral act). The surface owners sought to claim their ownership of the purported abandoned mineral interests under the statutes. Robert Hall did not personally intervene or raise any issue in the 2011 quiet title action about his alleged 1988 purchase of the NPRI from Myles Hall. Robert Hall asserts the 2011 quiet title action resulted in the NPRI being "restored" in his father's name, as it had been previously held.

[¶5] The district court's 2015 judgment in the 2011 quiet title action addressing the Estate of Myles Hall's interest states, in relevant part:

> Pursuant to said *Order* [granting the Estate of Myles Hall's motion for summary judgment], which is incorporated herein by reference, it is hereby . . . ORDERED, ADJUDGED, AND DECREED that Defendant Estate of Myles Hall is the owner of a 1.04% non-participating royalty interest in [the subject real property].

[¶6] In 2018, Robert Hall brought this quiet title action against the Hall defendants seeking the 1.04% NPRI be quieted in his name. In May 2018, defendant Leslie Hall, aka Leslie Hall Butzer, filed an answer and counterclaim. Robert Hall moved for a partial default judgment against defendants Deborah Hall and John Hall. In July 2018, Deborah Hall filed an answer and counterclaim, and the district court subsequently denied the motion for default judgment as to her. In August 2018, the court granted the motion for default judgment against John Hall, and a judgment was entered against him.

[¶7] In November 2018, defendants Leslie Hall and Deborah Hall moved for summary judgment, arguing that collateral estoppel and res judicata barred Robert Hall's claims. Robert Hall opposed the motion and moved for summary judgment on defendants' outstanding counterclaims. The district court granted Leslie Hall and Deborah Hall's summary judgment motion, denied Robert Hall's subsequent motion for reconsideration, and granted Robert Hall's summary judgment motion to dismiss the defendants' counterclaims seeking attorney fees. In May 2019, Robert Hall appealed.

2

[¶8] John Hall died in July 2019, while this appeal was pending. The personal representative of the Estate of John Hall moved the district court to vacate the August 2018 default judgment against John Hall and also moved this Court for a temporary remand to decide the motion. In October 2019, the court on remand granted the motion to vacate. In November 2019, the court also entered an order adopting the parties' stipulation for substitution of parties, substituting the Estate of John F. Hall for John F. Hall as a defendant. After the parties stipulated to a final judgment to include all of the Hall defendants, Robert Hall filed an amended notice of appeal to include the order to vacate.

## II

[¶9] Robert Hall contends the district court abused its discretion in vacating the default judgment against John Hall.

[¶10] In *Bickler v. Happy House Movers, L.L.P.*, 2018 ND 177, ¶ 12, 915 N.W.2d 690 (quoting *Key Energy Servs., LLC v. Ewing Constr. Co., Inc.*, 2018 ND 121, ¶ 13, 911 N.W.2d 319), we explained:

> On appeal, to establish a basis for relief under N.D.R.Civ.P. 60(b) from a district court's denial of a motion for relief from a default judgment, a party must show the district court abused its discretion. . . . An abuse of discretion by the [district] court is never assumed and must be affirmatively established, and this Court will not overturn a court's decision merely because it is not the one it would have made had it been deciding the motion.

[¶11] "[T]here should generally be greater liberty in granting motions under N.D.R.Civ.P. 60(b) when the matter involves a default judgment rather than a judgment following a full trial on the merits." *Bickler*, at ¶ 12 (quoting *Key Energy Servs.*, at ¶ 13); *see also Overboe v. Brodshaug*, 2008 ND 112, ¶ 8, 751 N.W.2d 177; *Gepner v. Fujicolor Processing, Inc.*, 2001 ND 207, ¶ 14, 637 N.W.2d 681. In *Gepner*, at ¶ 14 (internal citations and quotations omitted), this Court discussed relevant considerations to guide the district court's discretion:

3

This court has long encouraged trial courts to be more lenient when entertaining Rule 60(b) motions to vacate default judgments as distinguished from "litigated" judgments, that is, judgments entered after trial on the merits. While a trial court certainly has discretion to grant or deny a Rule 60(b) motion to vacate a default judgment, the range of that discretion is limited by three important considerations. First, Rule 60(b) is remedial in nature and should be liberally construed and applied. Second, decisions on the merits are preferable to those by default. Third, as a consequence of the first two considerations, where timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits.

A district court abuses its discretion when it acts arbitrarily, unreasonably, or unconscionably, or when it misinterprets or misapplies the law. *Warnke v. Warnke*, 2011 ND 212, ¶ 4, 806 N.W.2d 606.

[¶12] Robert Hall argues that the Estate of John Hall's motion to vacate and accompanying brief and affidavits provided no evidence the district court could rely on to reach a reasoned and reasonable decision. He contends the Estate failed to overcome the rebuttable presumption that service was proper, as evidenced by the affidavit of non-service. He also asserts that as an *in rem* action, personal service was not absolutely necessary and service by publication was sufficient. He further contends this was not an exceptional circumstance warranting the decision to vacate and the court's decision is contrary to law.

[¶13] The Estate of John Hall responds, however, that the district court did not abuse its discretion by finding the motion to vacate was timely filed and in determining justice requires a decision on the merits. The Estate asserts the motion was made within one year of the default judgment and the court had already established the codefendants had meritorious defenses, as they had been granted summary judgment. The Estate further contends Robert Hall is not prejudiced by having the default judgment vacated.

4

[¶14] Here, the district court granted the motion to vacate the default judgment against John Hall. In so doing, the court stated: "The motion to vacate was timely filed and justice requires a decision based upon the merits." While somewhat conclusory, the court explained its decision, which does not appear arbitrary or capricious when considering the prior summary judgment proceedings. We have said that a court should be more lenient in considering Rule 60(b) motions to vacate default judgments as distinguished from "litigated" judgments and that we prefer decisions on the merits. Moreover, in this case the court had already determined the other similarly situated codefendants, as heirs of Myles Hall, had established meritorious defenses.

[¶15] On the basis of our review, we cannot say the district court abused its discretion in vacating the default judgment against John Hall.

III

[¶16] Robert Hall argues the district court erred in granting the defendants' summary judgment motion because his claims are not barred by res judicata. Our standard of review for summary judgment is well established:

> Summary judgment is a procedural device under N.D.R.Civ.P. 56(c) for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. The party seeking summary judgment must demonstrate there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. In deciding whether the district court appropriately granted summary judgment, we view the evidence in the light most favorable to the opposing party, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record. A party opposing a motion for summary judgment cannot simply rely on the pleadings or on unsupported conclusory allegations. Rather, a party opposing a summary judgment motion must present competent admissible evidence by affidavit or other comparable means that raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact.

5

*City of Fargo v. Wieland*, 2019 ND 286, ¶ 6, 936 N.W.2d 55 (quoting *Brock v. Price*, 2019 ND 240, ¶ 10, 934 N.W.2d 5). The district court's decision on summary judgment is a question of law, which is reviewed de novo on the record. *Id.*

A

[¶17] "Res judicata, or claim preclusion, prevents relitigation of claims that were raised, or could have been raised, in prior actions between the same parties or their privies." *Sundance Oil & Gas, LLC v. Hess Corp.*, 2017 ND 269, ¶ 6, 903 N.W.2d 712 (quoting *Kulczyk v. Tioga Ready Mix Co.*, 2017 ND 218, ¶ 10, 902 N.W.2d 485); *see also Missouri Breaks, LLC v. Burns*, 2010 ND 221, ¶ 10, 791 N.W.2d 33. "Fundamental fairness underlies determinations of privity and res judicata." *Kulczyk*, at ¶ 11. In *Missouri Breaks*, at ¶ 12, this Court applied the following elements to decide whether res judicata barred claims:

> 1. A final decision on the merits in the first action by a court of competent jurisdiction;
> 2. The second action involves the same parties, or their privies, as the first;
> 3. The second action raises an issue actually litigated or which should have been litigated in the first action;
> 4. An identity of the causes of action[.]

[¶18] Privity exists when one is so identified in interest with another that the person represents the same legal right. *Ungar v. N.D. State Univ.*, 2006 ND 185, ¶ 12, 721 N.W.2d 16. Privity includes:

> a person who is not technically a party to a judgment, or in privity with him, but who is, nevertheless, connected with it by his interest in the prior litigation and by his right to participate therein, at least where such right is actively exercised by prosecution of the action, employment of counsel, control of the defense, filing of an answer, payment of expenses or costs of the action, the taking of an appeal, or the doing of such other acts as are generally done by parties.

6

*Id.* (quoting *Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380, 384 (N.D. 1992)). "The doctrine of res judicata does not apply to matters *which are incidental or collateral* to the determination of the main controversy." *Martin v. Rath*, 1999 ND 31, ¶ 9, 589 N.W.2d 896 (emphasis added). The applicability of res judicata presents a question of law and is fully reviewable on appeal. *Sundance Oil & Gas*, 2017 ND 269, ¶ 6.

[¶19] Here, the district court applied the four elements provided in *Missouri Breaks*, concluded all the elements were met, and held res judicata barred the current action. The court held that the 2011 quiet title action resulted in a final decision on the merits relating to the Estate of Myles Hall's ownership of the NPRI and that Robert Hall and the Hall defendants are heirs—successors in interest—and have privity with the Estate. While Robert Hall's ownership claim through the alleged 1988 purchase was not litigated, the court held his ownership claim could have and should have been addressed in the 2011 action. The court further concluded the fourth element—an identity of the causes of action—applied because if Robert Hall had litigated his ownership of the NPRI in the 2011 action, a final judgment would have barred this action and the same evidence would be used in both of the actions.

B

[¶20] Robert Hall argues this quiet title action is "incidental" to the earlier 2011 action and title to the NPRI was not determined on the merits between the parties to this action. He contends he seeks simply to confirm the conveyance from his father; an opportunity never given to him during the earlier case because that action was one of mere interpretation of North Dakota's dormant mineral act. He asserts the present action addresses ownership of the NPRI after Myles Hall's conveyance to Robert Hall.

[¶21] Robert Hall argues the 2015 judgment in the 2011 action only determined the applicability of the North Dakota abandoned mineral act. He asserts there was no claim in the prior action that Myles Hall or the Estate did not own the NPRI; rather, the issue was whether the act had stripped the interest from him or the Estate. He contends the only question in the 2011 action was whether the surface owner had succeeded to the ownership of the

7

royalty interests. He contends he and the Hall defendants were not in privity with the Estate of Myles Hall in the prior action, the issues litigated in these two actions are distinct, and the issue of title between the parties to this action was not litigated in the 2011 action.

[¶22] Generally, this Court has held that "the privity doctrine cannot be applied if the rights to property were acquired by the person sought to be bound before the adjudication." *Gerrity Bakken, LLC v. Oasis Petroleum N. Am., LLC*, 2018 ND 180, ¶ 17, 915 N.W.2d 677 (citing *Hull v. Rolfsrud*, 65 N.W.2d 94, 98 (N.D. 1954)); *see also Great Plains Royalty Corp. v. Earl Schwartz Co.*, 2019 ND 124, ¶ 28, 927 N.W.2d 880; *Bismarck Pub. Sch. Dist. v. Hirsch*, 136 N.W.2d 449, 454 (N.D. 1965); 50 C.J.S. *Judgments* § 1163 (June 2020 Update) ("A judgment with respect to real property against a vendor or grantor is binding on the purchaser or grantee where the latter acquired his or her interest after the commencement of the suit, but not where he or she acquired it prior to that time and is not a party to the action at the time of rendition of judgment."). In *Gerrity Bakken*, at ¶ 17, we explained:

> A quiet title or declaratory judgment is not binding on any persons having interests in leases and wells who were not made parties to the action. *See Golden v. SM Energy Co.*, 2013 ND 17, ¶ 21, 826 N.W.2d 610; *see also Nord v. Herrman*, 2001 ND 11, ¶ 14, 621 N.W.2d 332 ("The judgment is not binding on other property owners in the area who were not made parties to this action and who might have a claim to the subject property."). Gerrity Bakken and its predecessors, "persons appearing of record" to have an interest in the property, were not made parties to the 2013 quiet title action. N.D.C.C. § 32-17-05. "[U]nless one is a party to a proceeding or in privity with those who are parties to an action, he cannot be bound by the judgment in that action." *Sturdevant v. SAE Warehouse, Inc.*, 270 N.W.2d 794, 799 (N.D. 1978) (footnote omitted). However, the privity doctrine cannot be applied if the rights to property were acquired by the person sought to be bound before the adjudication. *See Hull v. Rolfsrud*, 65 N.W.2d 94, 98 (N.D. 1954).

In *Sprynczynatyk v. Celley*, 486 N.W.2d 230, 231 (N.D. 1992) (quoting *Hull*, 65 N.W.2d at 96-97 Syll. ¶ 1), this Court said:

Privity is the mutual or successive relationship to the same rights of property. If it is sought to bind one as privy by an adjudication against another it must appear that at the time he acquired the rights or succeeded to the title it was then affected by the adjudication. If the right was acquired by him before the adjudication, then the doctrine cannot apply.

[¶23] The present case involves whether the 2011 quiet title proceeding, resulting in the 2015 judgment and quieting title to the NPRI in the Estate of Myles Hall, also binds Robert Hall individually and forecloses his present action to establish sole ownership of the NPRI. In the 2011 action, Robert Hall was acting as personal representative for the Estate of Myles Hall.

[¶24] This Court has looked to the Restatement of Judgments (Second) (1982) for guidance. *See, e.g.*, *Gerrity Bakken*, 2018 ND 180, ¶ 19; *Northstar Founders, LLC v. Hayden Capital USA, LLC*, 2014 ND 200, ¶ 63, 855 N.W.2d 614; *Lucas v. Porter*, 2008 ND 160, ¶ 18, 755 N.W.2d 88; *Baier v. N.D. Workers Comp. Bureau*, 2000 ND 78, ¶ 18, 609 N.W.2d 722; *Westman v. Dessellier*, 459 N.W.2d 545, 547 (N.D. 1990); *Klem v. Greenwood*, 450 N.W.2d 738, 742-43 (N.D. 1990). In *Sprynczynatyk*, 486 N.W.2d at 232, this Court cited with approval the Restatement (Second) of Judgments § 36 (1982). This section addresses when a party appears in a different capacity:

> (1) A party appears in his individual capacity unless, in his designation as a party or by other manifestation, it is made evident that he appears in some other capacity.
> (2) A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity.

[¶25] Additionally, we note the Restatement (Second) of Judgments § 43 (1982), provides:

> A judgment in an action that determines interests in real or personal property:
> > (1) With respect to the property involved in the action:
> > > (a) *Conclusively determines the claims of the parties to the action regarding their interests*; and

(b) Has preclusive effects upon a person who succeeds to the interest of a party to the same extent as upon the party himself.

(2) With respect to other property held by a party to the action, does not preclude a person who is a successor in interest thereof from subsequently litigating issues determined in the action.

(Emphasis added.) *See also* 50 C.J.S. *Judgments* § 1089 (June 2020 Update) ("A judgment on a question of title or right to property is conclusive in a subsequent litigation involving the same property where the question was in issue and was expressly or by necessary implication determined; but the judgment ordinarily is not conclusive of title or rights to other property."); 50 C.J.S. *Judgments* § 1189 (June 2020 Update) ("A judgment in an action to quiet title bars subsequent litigation on the same cause of action between the same parties or their privies, and is final and conclusive not only as to all issues actually involved and determined, but also as to such matters as should have been litigated and determined in the former action."); *see also Raleigh v. Raleigh*, 91 N.E.2d 241, 247 (Ohio 1950) ("There is no such privity between a personal representative and the heirs of a person as will cause a judgment against the representatives to foreclose the heirs, who are not parties thereto, where real estate is involved."); 50 C.J.S. *Judgments* § 1172 (June 2020 Update) ("A judgment against an executor or administrator ordinarily is not conclusive on the heirs and devisees with respect to lands descended or devised to them.").

[¶26] Robert Hall contends the 2011 action only resulted in defeating the surface owners' claim to the NPRI at issue in this case. We agree. The 2015 judgment in the 2011 case only concluded the Estate of Myles Hall is the owner of the 1.04% non-participating royalty interest. The judgment does not address the respective interests of the heirs of Myles Hall, and their individual interests were not litigated in the 2011 action.

[¶27] In the 2011 action, the surface owners claimed title to the alleged abandoned mineral interests under N.D.C.C. ch. 38-18.1. The Estate of Myles Hall answered, raised defenses in response to the complaint, and

counterclaimed against the surface owners, seeking a decree that title to the NPRI be quieted in the Estate. In moving for summary judgment, the Estate of Myles Hall also requested the district court to grant the relief sought in its answer and counterclaim and to order an accounting and payment of any royalties attributable to Hall's interest. In granting summary judgment, the court's 2015 judgment only determined: "Defendant Estate of Myles Hall is the owner of a 1.04% non-participating royalty interest" in the property. The heirs' respective ownership of the NPRI at issue was plainly not at issue.

[¶28] Robert Hall's claimed sole ownership of the NPRI was acquired before the 2011 quiet title action and before Myles Hall died. From the record, Robert Hall participated in the 2011 quiet title action only as a personal representative of the Estate of Myles Hall, rather than in his individual capacity. *See* N.D.R.Civ.P. 17(a)(1)(A) ("An action must be prosecuted in the name of the real party in interest. The following may sue in their own names without joining the person for whose benefit the action is brought: (A) a personal representative[.]"). Robert Hall was not named as a party in his individual capacity, and his interests in the NPRI were not litigated in the 2011 proceedings. *Cf. Stetson v. Inv'rs Oil, Inc.*, 176 N.W.2d 643, 647-52 (N.D. 1970) (stating two well-established exceptions exist to the general rule that beneficiaries are necessary parties in actions by or against a trustee relating to the trust property—where absent parties are properly represented; and, when a trustee is made a party to the suit affecting the beneficiaries' interest. In such case, the beneficiaries are bound by the decree as if they were individually made parties to the action).

[¶29] Moreover, this Court has "drawn a clear distinction between the statutory abandoned minerals procedure under N.D.C.C. ch. 38-18.1 [which is wholly self-executing, see N.D.C.C. § 38-18.1-02] and a subsequent quiet title action, and [has] emphasized they are entirely separate, distinct procedures." *Peterson v. Jasmanka*, 2014 ND 40, ¶¶ 12-13, 842 N.W.2d 920. Under N.D.C.C. § 38-18.1-06.1(1), providing the process for perfecting title in a surface owner, surface owners who have completed the procedure found in N.D.C.C. § 38-18.1-06 may commence an action to obtain "a judgment in quiet title in the owner or owners of the surface estate." "This action must be brought in the same

11

manner and is subject to the same procedure as an action to quiet title pursuant to chapter 32-17." N.D.C.C. § 38-18.1-06.1(1). *See generally* William P. Pearce, *The North Dakota Supreme Court Deals With the Abandoned Minerals Act*, 93 N.D. L. Rev. 355, 383-86 (2018) (discussing "separate" statutory quiet title action under N.D.C.C. § 38-18.1-06.1, and characterizing it as "curious" and "odd" since a surface owner had been able to bring a quiet title action to obtain a judgment confirming title under existing statutes). The underlying 2011 action under N.D.C.C. ch. 38-18.1, seeking to quiet title in the surface owners, was a "separate, distinct procedure" and involved multiple defendants.

[¶30] Under these facts and circumstances, we conclude that privity does not apply and the heirs' respective claims in the NPRI were not litigated, nor were they required to be litigated in the prior action commenced under the separate, distinct procedures of N.D.C.C. ch. 38-18.1. We conclude the district court erred in holding res judicata applied to bar Robert Hall's present claims of ownership to the NPRI at issue. We therefore conclude the court erred in granting summary judgment to the Hall defendants. We reverse and remand for further proceedings on Robert Hall's alleged sole ownership interest of the NPRI.

IV

[¶31] We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

[¶32] Lisa Fair McEvers
Gerald W. VandeWalle
Jerod E. Tufte
Daniel J. Crothers
Jon J. Jensen, C.J.