2013 ND 78

Carol J. JOHNSON, Plaintiff and Appellant

v.

Natalya BRONSON, M.D.; Prairie St. John's Fargo, LLC, dba Prairie St. John's Hospital; B.R. Clark, R.N., Steven Mottinger; John Does 1–100; Jane Does, 1–100, Defendants and Appellees.

No. 20120239.

Supreme Court of North Dakota.

May 14, 2013.

Carol J. Johnson, self-represented, Fargo, ND, plaintiff and appellant.

Randall S. Hanson (on brief) and Donna M. Smith (argued), Grand Forks, ND, for defendants and appellees Natalya Bronson, M.D.; Prairie St. John's Fargo, LLC; B.R. Clark, R.N.; John Does 1–100; and Jane Does 1–100.

James S. Hill (argued) and Kara J. Johnson (appeared), Bismarck, ND, for defendant and appellee Steven Mottinger.

KAPSNER, Justice.

[¶ 1] Carol Johnson appeals from a judgment denying her motions for summary judgment, motion to amend her complaint, and granting the defendants' summary judgment motions for various claims related to her involuntary hospitalization. Johnson also appeals from an order denying her motion for reconsideration and an order denying her objections to the district court's award of costs and disbursements to the defendants. We affirm.

I

[¶ 2] In 2009, Johnson, a formerly licensed attorney in California, representing herself, sued Dr. Natalya Bronson, Registered Nurse B.R. Clark, Prairie St. John's Hospital, ("Prairie"), John Does 1–100, Jane Does 1–100 (collectively "Medical Defendants"), and Attorney Steven Mottinger after being involuntarily hospitalized. Johnson asserted claims of: (1) negligence of physician; (2) negligent credentialing and supervision of physician by hospital; (3) negligent credentialing and supervision of the nurse and other employees by hospital; (4) malicious credentialing and supervision of physician and other staff members by hospital; (5) vicarious liability of

hospital; (6) false imprisonment; (7) negligent infliction of emotional distress; (8) intentional infliction of emotional distress; (9) alternative liability of hospital in respondeat superior-intentional infliction of emotional distress; and (10) legal malpractice.

[¶ 3] In 2007, Johnson interviewed in Bismarck for a position with the North Dakota Bureau of Criminal Investigations. Johnson claims that during the interview, she "sensed a radio frequency or other device which created for her what she termed to be ... 'electronic hazard[s].'"[1] Upon returning home from the interview, Johnson reported the "electronic hazards" to the North Dakota Attorney General's Office. Johnson believed these "electronic hazards" were intended to harm her and her son and evidenced the commission of crimes. Johnson began contacting local law enforcement to report the "electronic hazards" because she was concerned with enforcement of laws proscribing the "electronic hazards." Law enforcement contacted Johnson's son and encouraged him to have Johnson visit Prairie, a psychiatric and chemical dependency center in Fargo, to discuss her concerns. On July 18, 2007, Johnson and her son visited Prairie and spoke with staff members.

[¶ 4] After meeting with staff, Johnson was involuntarily detained under N.D.C.C. § 25–03.1–25 as a "person requiring treatment." Registered Nurse B.R. Clark, a mental health professional, signed the application for emergency admission. On July 19, 2007, Dr. Natalya Bronson performed an evaluation and concluded Johnson was experiencing paranoia and had a delusional disorder. Dr. Bronson's evaluation stated that "there exists a serious risk of harm ... and substantial likelihood of ... substantial deterioration in mental health which would predictably result in dangerousness to that person, others, or property" and no less restrictive alternative to hospitalization existed. Dr. Bronson also noted Johnson had a thyroid enlargement, possibly causing her condition. A petition for Johnson's involuntary commitment was filed.

[¶ 5] On July 20, 2007, a preliminary hearing was held in accordance with N.D.C.C. ch. 25–03.1 to determine if there was probable cause to involuntarily hospitalize Johnson as a "person requiring treatment." Attorney Steven Mottinger represented Johnson at the hearing. Before the hearing, Mottinger met with Johnson to discuss her case. According to Johnson, Mottinger "exhibited the conduct of 'electronic hazards'" when they met. Mottinger testified in a deposition that Johnson told him he was "emitting electronic hazards" and refused to speak with him. At the hearing, Dr. Bronson testified that Johnson was mentally ill and was a person requiring treatment. Dr. Bronson recommended that Johnson be held for a period of up to fourteen days. In contrast, Johnson testified that she was not suffering from a mental illness and, because the electronic hazards she reported constituted crimes, it was her civic duty to report them. The court determined probable cause existed to hospitalize Johnson. Johnson was returned to Prairie; however, she refused all medications and recommendations of the treatment team. On July 24, 2007, Prairie discharged Johnson, reporting: "[Johnson] is not following the recommendations of the treatment team ... but [Johnson] is not gravely disabled, a danger to herself, or danger to others at

---

1. In her deposition, Johnson stated that she does not know what "electronic hazards" actually are because she cannot see or hear them; rather, they are sensory perceptions that she senses and perceives on her skin.

this time, so we are discharging her against medical advice."

[¶ 6] In 2009, Johnson commenced this action. Her claims against the Medical Defendants essentially asserted that because "[a]t all material times, [she] was without mental defect or disease of any kind whatsoever," the Medical Defendants had no authority to involuntarily commit her. Johnson's claims against Mottinger asserted that he committed legal malpractice in his representation of Johnson and was also liable for false imprisonment and negligent and intentional infliction of emotional distress. Johnson alleged that, as a result of Mottinger and the Medical Defendants' conduct, she was subjected to numerous electronic hazards and suffered "severe and serious injuries and monetary damages." Johnson sought compensatory damages for costs related to medical care and treatment, pain and suffering, and the "loss of the enjoyment of life." Johnson sought damages in excess of $10,000,000 for lost wages and reduced earning capacity, asserting her ability to reenter the legal profession had been destroyed due to the stigma of being civilly committed.

[¶ 7] In November 2011, Mottinger moved for partial summary judgment seeking to dismiss Johnson's legal malpractice claim against him. Johnson responded and moved for summary judgment against Mottinger. In December 2011, the Medical Defendants made multiple motions for summary judgment or partial summary judgment on Johnson's various claims and issues. Johnson responded and moved for summary judgment against the Medical Defendants. Mottinger also joined in the Medical Defendants' summary judgment motions related to noneconomic and economic damages. Johnson then moved to amend her second amended complaint to identify some of the John and Jane Doe defendants by name and to seek punitive damages.

[¶ 8] On March 20, 2012, in a 40–page memorandum decision and order, the district court denied Johnson's summary judgment motions and her motion to amend her complaint and granted Mottinger and the Medical Defendants summary judgment motions. The district court also awarded Mottinger and the Medical Defendants costs and disbursements. Johnson objected to the costs and disbursements award. The court denied her objections. Johnson appealed the district court's summary judgment decisions, award of costs and disbursements, and "all other orders adverse to the Plaintiff in this proceeding. . . ." Johnson also moved for reconsideration of the March 20, 2012, order under N.D.R.Civ.P. 60 and submitted a 108–page brief in support of her motion. The district court subsequently decided that it did not have jurisdiction to consider Johnson's Rule 60 motion because Johnson had filed a notice of appeal. In June 2012, Johnson moved this Court to remand this case to the district court. On remand, the district court denied Johnson's motion for reconsideration, concluding Johnson had failed to put forth grounds for relief under Rule 60. Johnson then appealed the district court's denial of her motion for reconsideration.

II

[¶ 9] Our standard for summary judgment is well-established:

Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing

there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Golden v. SM Energy Co.*, 2013 ND 17, ¶ 7, 826 N.W.2d 610 (citation omitted). "Rule 56 requires the entry of summary judgment against a party who fails to establish the existence of a material factual dispute as to an essential element of the claim and on which the party will bear the burden of proof at trial." *Barbie v. Minko Constr., Inc.*, 2009 ND 99, ¶ 6, 766 N.W.2d 458 (citation omitted). "When no pertinent evidence on an essential element is presented to the trial court in resistance to the motion for summary judgment, it is presumed that no such evidence exists." *Id.* (citation and quotation omitted).

### A

[¶ 10] Johnson argues the district court erred in granting summary judgment to Dr. Bronson on Johnson's medical negligence claim. Johnson claims that, among other things, Dr. Bronson "negligently and carelessly performed or supervised said medical evaluation of the plaintiff. . . ." As a result of Dr. Bronson's negligence, Johnson asserts she suffered various noneconomic and economic damages.

[¶ 11] Within three months of commencing an action for medical negligence, a plaintiff must "serve[ ] upon the defendant an affidavit containing an admissible expert opinion to support a prima facie case of professional negligence. . . ." N.D.C.C. § 28–01–46. The purpose of this requirement is to "screen[ ] . . . totally unsupported claims and . . . to prevent protracted litigation when a medical malpractice plaintiff cannot substantiate a basis for the claim." *Van Klootwyk v. Baptist Home, Inc.*, 2003 ND 112, ¶ 10, 665 N.W.2d 679 (citation omitted).

[¶ 12] To establish a prima facie case of medical negligence, a plaintiff must produce "expert evidence establishing the applicable standard of care, violation of that standard, and a causal relationship between the violation and the harm complained of." *Scheer v. Altru Health Sys.*, 2007 ND 104, ¶ 18, 734 N.W.2d 778. However, expert testimony is not required "to establish a duty, the breach of which is a blunder so egregious that a layman is capable of comprehending its enormity." *Haugenoe v. Bambrick*, 2003 ND 92, ¶ 10, 663 N.W.2d 175 (quotation omitted); *see also* N.D.C.C. § 28–01–46. This " 'obvious occurrence' exception applies only to cases that are plainly within the knowledge of a layperson. In an 'obvious occurrence' case, expert testimony is unnecessary precisely because a layperson can find negligence without the benefit of an expert opinion." *Larsen v. Zarrett*, 498 N.W.2d 191, 195 (N.D.1993). Johnson does not argue the "obvious occurrence" exception applies to her medical negligence claim.

[¶ 13] Section 25–03.1–25, N.D.C.C., allows for emergency detention or hospitalization "[w]hen a . . . mental health professional has reasonable cause to believe that an individual is a person requiring treatment and there exists a serious risk of

harm to that person, other persons, or property of an immediate nature that considerations of safety do not allow preliminary intervention by a magistrate. . . ." A "[p]erson requiring treatment" is "a person who is mentally ill . . . and there is a reasonable expectation that if the person is not treated . . . there exists a serious risk of harm to that person, others, or property." N.D.C.C. § 25–03.1–02(12). Chapter 25–03.1, N.D.C.C., defines "[s]erious risk of harm" in four ways. Relevant to this case, " '[s]erious risk of harm' means a substantial likelihood of · . . . [s]ubstantial deterioration in mental health which would predictably result in dangerousness to that person, others, or property, based upon evidence of objective facts. . . ." N.D.C.C. § 25–03.1–02(12)(d).

[¶ 14] In this case, Dr. Stacey Benson submitted an affidavit on Johnson's behalf in support of her medical negligence claim. In November 2009, the Medical Defendants filed a motion to dismiss, asserting Dr. Benson's affidavit failed to satisfy the expert opinion requirement of N.D.C.C. § 28–01–46. In January 2010, the district court concluded Dr. Benson, a psychologist, was not qualified to offer an expert opinion regarding the appropriate standard of care of Dr. Bronson, a psychiatrist and licensed physician. The court did not grant the Medical Defendants' motion to dismiss; rather, it allowed Johnson to "rehabilitate her affidavit and compliance with N.D.C.C. 28–01–46." Johnson then submitted a supplemental affidavit from Dr. Faruk Abuzzahab, M.D., Ph.D. Dr. Abuzzahab's medical certification attached to his supplemental affidavit stated that he reviewed the "extensive records" of Johnson's involuntary commitment. Dr. Abuzzahab opined: "It is my professional opinion within medical certainty that regardless of the exact diagnosis there was no medical or psychiatric justification for the 24 hour hold and the involuntary confinement of Ms. Johnson."

[¶ 15] In November 2011, Dr. Abuzzahab was deposed. Dr. Abuzzahab testified that because he "didn't practice in North Dakota" he was unfamiliar with North Dakota's statutes regarding emergency holds and involuntary commitments. Dr. Abuzzahab said that he "assume[d] they're the same like Minnesota," but later stated he would defer much of his expert opinion to someone familiar with North Dakota's commitment procedures. Dr. Abuzzahab testified that his criticism of Dr. Bronson was based in part on Dr. Bronson's preliminary hearing testimony that Johnson was a danger to herself; however, he also testified that he did not review Dr. Bronson's testimony. When asked if a mental health professional's involuntary commitment determination could be based on the deterioration of an individual's mental health, Dr. Abuzzahab stated: "I [have] never heard that prevention of deterioration [in mental health qualified] as a requirement for commitment. At least I have never considered, you know, prevention of deterioration as a basis for commitment in all the cases that I have . . . reviewed."

[¶ 16] Dr. Bronson's July 19, 2007, Report of Examination evaluated Johnson's physical and mental condition. Her report recited N.D.C.C. § 25–03.1–02(12)(d)'s language, stating "there exists a serious risk of harm . . . and substantial likelihood of . . . substantial deterioration in [Johnson's] mental health which would predictably result in dangerousness to that person, others, or property. . . ." Johnson was involuntarily hospitalized under statutory language that Dr. Abuzzahab, Johnson's proffered expert in medical negligence, was unaware of and felt was insufficient to involuntarily hospitalize an individual. Dr. Bronson did not testify that Johnson was a danger to herself;

rather, she testified that Johnson's mental and physical health was at risk for deterioration if she was not confined for further treatment. In granting summary judgment, the district court held Dr. Abuzzahab's expert testimony was insufficient to support a prima facie case for Johnson's medical negligence claim because Dr. Abuzzahab's opinion was incomplete, based on incorrect facts, and lacked foundation.

[¶17] Dr. Benson was also deposed in November 2011, but she did not give an opinion of whether the medical care Johnson received was below the standard of care. Specifically, Dr. Benson testified she was unwilling "to say that what they did was below the standard of care and medical malpractice" because she would "leave [that opinion] to someone else." The district court determined Johnson failed to produce expert evidence from Dr. Benson regarding the applicable standard of care.

[¶18] Ultimately, the district court concluded that Johnson failed to produce expert evidence regarding the applicable standard of care from either Dr. Benson or Dr. Abuzzahab. We agree. Not only did Dr. Benson fail to offer an opinion regarding the applicable standard of care, the court had previously determined Dr. Benson was not qualified to offer an opinion regarding the standard of care of Dr. Bronson. Dr. Abuzzahab's expert testimony was also insufficient to serve as a prima facie case for her medical negligence claim. Though Johnson asserts expert medical testimony by Dr. Abuzzahab and Dr. Benson established breaches of duty of care of all medical professionals, the record shows differently. *See Scheer*, 2007 ND 104, ¶18, 734 N.W.2d 778.

[¶19] The district court also concluded Johnson failed to prove causation. To establish a prima facie case of medical negli-

gence, a plaintiff must produce "expert evidence establishing the applicable standard of care, violation of that standard, and a causal relationship between the violation and the harm complained of." *Scheer*, 2007 ND 104, ¶18, 734 N.W.2d 778. Neither Dr. Benson nor Dr. Abuzzahab offered any testimony regarding causation.

[¶20] "Rule 56 requires the entry of summary judgment against a party who fails to establish the existence of a material factual dispute as to an essential element of the claim and on which the party will bear the burden of proof at trial." *Barbie*, 2009 ND 99, ¶6, 766 N.W.2d 458 (citation omitted). Because Johnson failed to establish both the applicable standard of care and causation, we conclude the district court did not err in granting Dr. Bronson summary judgment.

B

[¶21] Johnson argues the district court erred in granting summary judgment to Mottinger on Johnson's legal malpractice claim. Johnson asserts that Mottinger's negligent representation at the July 20, 2007, preliminary hearing resulted in her involuntary commitment.

[¶22] "The elements of a legal malpractice action against an attorney for professional negligence are [1] the existence of an attorney-client relationship, [2] a duty by the attorney to the client, [3] a breach of that duty by the attorney, and [4] damages to the client proximately caused by the breach of that duty." *Dan Nelson Constr., Inc. v. Nodland & Dickson*, 2000 ND 61, ¶14, 608 N.W.2d 267 (citation omitted). "Generally, expert testimony is necessary to establish the professional's standard of care (duty) and whether the professional's conduct in a particular case deviated from that stan-

dard of care (breach of duty)." *Wastvedt v. Vaaler*, 430 N.W.2d 561, 565 (N.D.1988) (parentheticals in original and citations omitted). "When it is alleged that an attorney negligently failed to perform some act on behalf of the client, the plaintiff must allege and prove performance of the act would have benefitted the client." *Dan Nelson Constr.*, at ¶ 14 (citing *Swanson v. Sheppard*, 445 N.W.2d 654, 658 (N.D.1989)). "In this context, the 'case-within-a-case' doctrine applies to alleged negligently-conducted litigation and requires that, but for the attorney's alleged negligence, the litigation would have terminated in a result more favorable for the client." *Dan Nelson Constr.*, at ¶ 14 (citation omitted).

[¶ 23] The district court granted summary judgment to Mottinger because Johnson failed to establish "that there was a causal relationship between any alleged negligence on the part of Attorney Mottinger and the damages she now claims." We agree. To establish the elements of Johnson's legal malpractice claim, Attorney Gregory Runge testified as Johnson's expert witness. Runge testified that Mottinger's representation breached the applicable standard of care; however, Runge stated multiple times in his deposition that he does not have an opinion regarding causation:

> Q: What about the causation part? There's going to be a discussion in this case of causation that is a damage. Are you opining as to a damage in this case?
>
> A: No. I don't know what the damages are.
>
> Q: You're not going to get to this point.... You know, you have to find a duty, a violation of a duty, and a causal relationship. You're kind of at the duty and violation of

duty. You don't get to the causation?

> A: No.
>
> ....
>
> Q: And you've not formed any opinions as to whether the conduct of Steve Mottinger was causative of a damage, whatever that damage is?
>
> A: Correct.

In addition to not having an opinion on causation, Runge's deposition testimony illustrates that there was nothing Mottinger could have done to change the outcome of the preliminary hearing that resulted in Johnson's involuntary commitment. The district court noted, "[Runge] acknowledged in all of the many specific instances that had Attorney Mottinger done things differently it still would not have likely altered the [preliminary hearing] decision rendered by [the trial court]." Johnson cannot show that but for Mottinger's alleged negligence, the outcome would have been different.

[¶ 24] "In order to meet the burden of establishing a genuine issue of material fact on an essential element of a claim, a party opposing a motion for summary judgment must present enough evidence for a reasonable jury to find for the plaintiff." *Barbie*, 2009 ND 99, ¶ 6, 766 N.W.2d 458 (citation and quotation omitted). Because Johnson failed to establish causation, we conclude the district court did not err in granting Mottinger summary judgment.

### III

[¶ 25] Johnson's appeal from the March 20, 2012, memorandum decision and order appeals all of the district court's summary judgment decisions and raises a myriad of additional issues related to Johnson's various claims. It is unnecessary to review the district court's determination of these issues. Following oral ar-

gument on the summary judgment motions and Johnson's motion to amend, the district court issued a 40–page memorandum decision and order granting Mottinger and the Medical Defendants' motions for summary judgment, denying Johnson's motions for summary judgment, and denying Johnson's motion to amend her complaint.[2] The district court thoroughly analyzed Johnson's numerous claims. The court's conclusions of law are in accordance with the applicable law, and it has not abused its discretion.

## IV

■■■ [¶ 26] Johnson appealed from the May 15, 2012, memorandum decision and order denying her objections to the district court's award of costs and disbursements to Mottinger and the Medical Defendants. She asserts the district court abused its discretion.

[¶ 27] Section 28–26–06, N.D.C.C., provides for the taxation of disbursements:

In all actions and special proceedings, the clerk of district court shall tax as a part of the judgment in favor of the prevailing party the following necessary disbursements:

1. The legal fees of witnesses; sheriffs; clerks of district court; the clerk of the supreme court, if ordered by the supreme court; process servers; and of referees and other officers;

2. The necessary expenses of taking depositions and of procuring evidence necessarily used or obtained for use on the trial;

3. The legal fees for publication, when publication is made pursuant to law;

4. The legal fees of the court reporter for a transcript of the testimony when such transcript is used on motion for a new trial or in preparing a statement of the case; and

5. The fees of expert witnesses. The fees must be reasonable fees as determined by the court, plus actual expenses. The following are nevertheless in the sole discretion of the trial court:

   a. The number of expert witnesses who are allowed fees or expenses;

   b. The amount of fees to be paid such allowed expert witnesses, including an amount for time expended in preparation for trial; and

   c. The amount of costs for actual expenses to be paid the allowed expert witnesses.

■■■ [¶ 28] Section 28–26–10, N.D.C.C., provides for the discretionary allowance of costs:

In actions other than those specified in sections 28–26–07, 28–26–08, and 28–26–09, costs may be allowed for or against either party in the discretion of the court. In all actions, when there are several defendants not united in interest and making separate defenses by separate answers and the plaintiff fails to recover judgment against all, the court may award costs to such of the defendants as have judgment in their favor.

"An award of costs under N.D.C.C. § 28–26–10 is discretionary, and a district court's decision on an award of disbursements under N.D.C.C. § 28–26–06 will be overturned on appeal only if an abuse of discretion is shown." *Holkesvig v. Welte*, 2011 ND 161, ¶ 12, 801 N.W.2d 712. "A [district] court abuses its discretion when it acts in an arbitrary, unreasonable, or

---

**2.** Because the district court granted summary judgment to the defendants, it deemed the Medical Defendants' motion for summary judgment related to Johnson's noneconomic damages moot. Accordingly, it did not rule on the motion.

unconscionable manner, or when it misinterprets or misapplies the law." *Wheeler v. Southport Seven Planned Unit Dev.,* 2012 ND 201, ¶ 30, 821 N.W.2d 746 (citations and quotation omitted).

[¶ 29]   Here, the district court's March 20, 2012, memorandum opinion and order awarded Mottinger and the Medical Defendants costs and disbursements. Mottinger filed a statement of costs and disbursements of $7,578.43, and the Medical Defendants filed a statement of costs and disbursements of $20,190.37. Judgment was subsequently entered. Johnson objected, filing a 41–page brief asserting Mottinger's costs should be reduced to $677.00, and the Medical Defendants' costs reduced to $127.14. Mottinger and the Medical Defendants served responses, and the district court denied Johnson's objections and awarded costs and disbursements in accordance with the judgment.

[¶ 30]   Mottinger and the Medical Defendants submitted verified statements of costs and disbursements, including individual invoices. Johnson's objection to Mottinger and the Medical Defendants' statements of costs and disbursements challenges almost all of the itemizations. The district court summarized Johnson's objections as arguing that none of the items listed were necessary expenses. The court's order denying Johnson's objections explained why the items were necessary expenses. The expenses included depositions of Johnson's expert witnesses and various fact witnesses, filing fees, fees of Mottinger and the Medical Defendants' experts, fees for an independent psychological examination of Johnson, court reporter fees and transcript costs, photocopying fees, and other various incurred expenses. Mottinger and the Medical Defendants were the prevailing parties in this matter, and the district court noted that the amounts were rea-

sonable and for necessary items considering the claims Johnson asserted. The litigation in this matter commenced in 2009 and involves over 400 docket entries, including many voluminous filings.

[¶ 31]   Because the district court's decision is the product of a rational mental process leading to a reasoned determination, we conclude the district court did not abuse its discretion in awarding costs and disbursements.

## V

[¶ 32]   Johnson appealed from the July 18, 2012, memorandum decision and order denying her Rule 60(b) motion for reconsideration of the district court's March 20, 2012, memorandum decision and order. Johnson argues the district court abused its discretion by denying her motion.

[¶ 33]   Rule 60(b), N.D.R.Civ.P., states: On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

[¶ 34] A Rule 60(b) motion is not an opportunity "to provide a litigant with a second chance to present new explanations, legal theories, or proof to a court." *Watts v. Magic 2 × 52 Mgmt., Inc.*, 2012 ND 99, ¶ 11, 816 N.W.2d 770 (citations and quotation omitted). A party seeking Rule 60(b) relief "bears the burden of establishing sufficient grounds for disturbing the finality of the decree, and relief should be granted only in exceptional circumstances." *Follman v. Upper Valley Special Educ. Unit*, 2000 ND 72, ¶ 10, 609 N.W.2d 90. "[T]he untimely submission of additional evidence to support a Rule 60(b) motion does not create exceptional circumstances justifying relief." *Id.* at ¶ 11 (citation omitted). A district court's "denial of a motion for reconsideration will not be reversed on appeal absent a manifest abuse of discretion." *Larson v. Larson*, 2002 ND 196, ¶ 11, 653 N.W.2d 869 (citation omitted). "A trial court abuses its discretion only when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Id.* (citation omitted).

[¶ 35] The district court denied Johnson's motion, holding Johnson failed to "provide any exceptional circumstances that might justify Rule 60(b) relief." The court noted, "[Johnson] has attempted to submit additional evidence that could have been previously provided by due diligence and then [attempts] to simply re-argue the original motions. That does not manifest any exceptional circumstances.... [Johnson] has not shown ... grounds for relief such as mistake, inadvertence, surprise, excusable neglect, or other grounds justifying relief." We agree.

[¶ 36] Johnson's Rule 60(b) motion attempts to reargue her claims with additional evidence. For example, Johnson submitted an affidavit of Dr. Abuzzahab in which Dr. Abuzzahab sought to "clarify and reaffirm" his previous testimony. To survive summary judgment, however, Johnson had to establish a prima facie case of medical negligence and had the burden to produce "expert evidence establishing the applicable standard of care...." *Scheer*, 2007 ND 104, ¶ 18, 734 N.W.2d 778. The district court previously determined Dr. Abuzzahab's opinion was insufficient, in part, because he was not familiar with North Dakota's involuntary commitment procedures. In his affidavit, Dr. Abuzzahab states that he has now "had the opportunity to carefully review the provisions of Chapter [25–03.1] of the North Dakota Century Code, in detail" and "attest[s] ... [his] opinions previously expressed have not changed."

[¶ 37] The district court previously allowed Johnson to "rehabilitate her affidavit and compliance with N.D.C.C. 28–01–46" after the court had initially determined Dr. Benson was not qualified to offer expert evidence regarding the applicable standard of care. Johnson offered no justification in her motion for reconsideration why the district court should allow her a third opportunity to rehabilitate her expert opinion by accepting Dr. Abuzzahab's affidavit now that he has "had the opportunity to carefully review the provisions of Chapter [25–03.1] of the North Dakota Century Code...." Moreover, Dr. Abuzzahab's affidavit still does not provide an opinion regarding the applicable standard of care under North Dakota law or an opinion regarding causation.

[¶ 38] In addition to her 108–page brief in support of her Rule 60(b) motion, Johnson also submitted at least three new deposition transcripts. Two of these depositions were dated November 28, 2011, well in advance of the January 27, 2012, summary judgment hearing. Johnson's evidence supporting her motion was available prior to the summary judgment hearing,

and her failure to timely submit her evidence does not create exceptional circumstances. *See Follman,* 2000 ND 72, ¶ 12, 609 N.W.2d 90. As we have said, under Rule 60(b):

> [A] decision to submit only certain evidence at a stage in the proceedings generally cannot later constitute exceptional circumstances justifying relief from a judgment. A Rule 60(b) motion is not to be used to relieve a party from free, calculated, and deliberate choices. Such mere misjudgment or careless failure to evaluate does not suffice. A party remains under a duty to take legal steps to protect his own interests.

*Follman,* at ¶ 11 (internal citations and quotations omitted).

[¶ 39] Because the district court's decision is the product of a rational mental process leading to a reasoned determination, we conclude the district court did not abuse its discretion in denying Johnson's Rule 60(b) motion.

## VI

[¶ 40] Johnson's May 18, 2012, notice of appeal states that she is appealing "all other orders adverse to the Plaintiff in this proceeding...." It is unnecessary to consider any other issues raised by Johnson because they are either unnecessary to our decision or without merit.

## VII

[¶ 41] We affirm the judgment and orders.

[¶ 42] MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.

GERALD W. VANDE WALLE, C.J., concurs in the result.