# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2024 ND 138

Anne Fahey a/k/a Anne Fife, Timothy Fife,
and Richard Dennis Fife,

Plaintiffs and Appellants

v.

Andrew D. Cook, Lukas D. Andrud, Ohnstad

Twichell, P.C.,

Defendants and Appellees

### No. 20230267

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Lolita G. Hartl Romanick, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice.

David J. Chapman, West Fargo, ND, for plaintiffs and appellants.

Richard J. Thomas (argued) and Christopher G. Angell (on brief), Arden Hills, MN, for defendants and appellees.

**Bahr, Justice.**

[¶1]    Anne Fahey, Timothy Fife, and Richard Fife (Plaintiffs) appeal from a judgment entered after the district court granted summary judgment to Andrew Cook, Lukas Andrud, and Ohnstad Twichell, P.C. (Defendants) dismissing Plaintiffs' legal malpractice action against Defendants. We conclude the court did not err in concluding collateral estoppel does not apply and did not err in granting summary judgment in favor of Defendants. We affirm.

I

[¶2]    Plaintiffs' action for legal malpractice stems from Defendants' representation of Plaintiffs in *Fahey v. Fife*, 2017 ND 200, 900 N.W.2d 250 (underlying litigation). In our opinion in that case, we set forth the following background facts:

> Marianne Fife owned a mineral interest in McKenzie County. She died without a will on December 16, 1989. Upon her death, Marianne Fife was an Idaho resident and was survived by her spouse, Richard A. Fife, and her three children, Anne Fahey, Timothy Fife, and Richard D. Fife. Richard A. Fife died in 1997, and was survived by his wife Joanne Fife.
> On December 4, 1989, while on home care services, Marianne Fife conveyed her mineral interest to her husband Richard Fife. She also conveyed her interest in the parties' Idaho home to Richard Fife on December 1, 1989.
> In 2011, Anne Fahey's aunt Carole Hill informed her about the circumstances surrounding Marianne Fife's December 4, 1989, conveyance of her mineral interest. Hill witnessed Richard Fife present a quit claim deed for Marianne Fife to sign, and Richard held Marianne's hand to help her sign her name on the deed. Hill believed Marianne Fife was not competent at the time to sign the deed, and was not informed as to what she was signing. Plaintiffs sued Joanne Fife, individually and as personal representative of Richard Fife's estate, claiming their mother lacked capacity to execute the deed because she was under medication to treat her pain. Plaintiffs also claimed their father exercised undue influence over their mother when she signed the deed. Plaintiffs requested the cancellation of the deed and sought an interest in the minerals.
> After a bench trial the district court concluded Marianne Fife lacked capacity to sign the deed for the minerals. The court also concluded she signed the deed as a result of Richard Fife's undue influence. The court

rescinded the deed and returned the mineral interest to Marianne Fife's estate; however, the court concluded that under North Dakota's intestate succession laws in effect when Marianne Fife died, her mineral interest passed to Richard Fife. The court quieted title to the mineral interest in Joanne Fife.

*Id.* at ¶¶ 2-5. Thus, while the district court rescinded the quitclaim deed for the minerals, returning the minerals to Marianne Fife's estate, the court held the minerals still passed to Richard Fife under the North Dakota intestate succession laws in effect at Marianne Fife's death and, therefore, Richard Fife's surviving spouse owned the minerals. *Id.* at ¶ 5.

[¶3]     This Court affirmed the district court's judgment on appeal. *Fahey*, 2017 ND 200, ¶¶ 1, 20. On appeal, we declined to consider Plaintiffs' argument Marianne Fife's estate had a cause of action against Richard Fife relating to the conveyance of the Idaho home because Plaintiffs did not make that argument in the district court. *Id.* at ¶ 11. We held the court's valuation of Marianne Fife's intestate estate was not clearly erroneous, stating, "[a]ssuming without deciding that Marianne Fife's intestate estate included all property wherever located, the total value of her estate was less than $50,000 and would pass to Richard Fife under the laws in effect when she died." *Id.* at ¶ 17 (citing N.D.C.C. § 30.1-04-02(3); Idaho Code § 15-2-102).

[¶4]     In 2018, Plaintiffs commenced this malpractice action against Defendants. Plaintiffs allege Defendants were negligent in the underlying litigation by: failing to contest the validity of the quitclaim deed purporting to convey Marianne Fife's interest in the Idaho marital home; failing to argue Marianne Fife's estate had a cause of action against Richard Fife's estate as a result of the alleged invalidity of that deed; and failing to argue Plaintiffs' inability to prove Marianne Fife's ownership and value of various personal property was because of Richard Fife's misconduct. Plaintiffs allege that, had Defendants taken those actions, the result would have been the overall value of Marianne Fife's North Dakota intestate estate would have increased to more than $50,000, and some of the minerals would have been disbursed to Plaintiffs under intestate succession laws. *See* N.D.C.C. § 30.1-04-02(3) (1989) (providing the "intestate share" of the surviving spouse is "the first fifty thousand dollars, plus one-half of the balance of the intestate estate[,]" "[i]f there are surviving issue all of whom are issue of the surviving spouse also").

[¶5]     In granting summary judgment, the district court held Defendants did not breach their duty to Plaintiffs. The court concluded Defendants did not have a duty to take the suggested actions because the actions would not have increased the value of Marianne

2

Fife's estate for distribution purposes. The court further held Plaintiffs did not suffer damages caused by the alleged breach of duty. The court concluded reasonable persons could only conclude that, even if Plaintiffs had successfully taken the suggested actions, the underlying litigation would not have ended more favorably for Plaintiffs because they still would not have received Marianne Fife's mineral interests.

II

[¶6] On appeal, Plaintiffs argue the district court erred in granting summary judgment on their legal malpractice claims. They contend the court erred in concluding: (1) Marianne Fife's estate, for valuation and distribution purposes, did not include real or personal property outside of North Dakota; (2) the interest in the marital home in Idaho would have bypassed probate and would never have been part of the estate valuation; (3) Defendants are not collaterally estopped from arguing Marianne Fife's interest in the marital home and personal property would never be part of the estate; and (4) a cause of action for fraud and undue influence for Richard Fife's wrongful actions had no value to Marianne Fife's estate.

[¶7] We review summary judgment decisions de novo to decide whether the information available to the district court was free of any genuine issues of material fact and whether the moving party was entitled to a judgment as a matter of law. *Mullin v. Pendlay*, 2022 ND 205, ¶ 5, 982 N.W.2d 330. "Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of a claim." *Riemers v. Omdahl*, 2004 ND 188, ¶ 4, 687 N.W.2d 445 (quoting *Zuger v. State*, 2004 ND 16, ¶ 7, 673 N.W.2d 615). A party resisting a summary judgment motion may not simply rely upon the pleadings or upon unsupported, conclusory allegations. *Id.* "Issues of fact become issues of law when a reasonable person could reach only one conclusion from the facts." *Mullin*, at ¶ 5.

[¶8] A legal malpractice action against an attorney for professional negligence has four elements:

> The elements of a legal malpractice action against an attorney for professional negligence are: 1) the existence of an attorney-client relationship, 2) a duty by the attorney to the client, 3) a breach of that duty by the attorney, and 4) damages to the client proximately caused by the breach of that duty.

3

*Mullin*, 2022 ND 205, ¶ 6. "When negligent representation is alleged against an attorney, the plaintiff must allege and prove performance of the act would have benefited the client." *Id.* "In this context, the 'case-within-a-case' doctrine applies to alleged negligently-conducted litigation and requires that, but for the attorney's alleged negligence, the litigation would have terminated in a result more favorable for the client." *Johnson v. Bronson*, 2013 ND 78, ¶ 22, 830 N.W.2d 595 (citation omitted). The plaintiff must prove the attorney's negligence was the proximate cause of the damage. *Id*. Summary judgment is ordinarily inappropriate for legal malpractice actions. *Mullin*, at ¶ 6.

III

[¶9]   Plaintiffs argue the district court erred in concluding Defendants were not collaterally estopped from arguing Marianne Fife's interest in the Idaho marital home and personal property would never be part of the estate.

[¶10]  Whether collateral estoppel applies is a question of law, which is fully reviewable on appeal. *Great Plains Royalty Corp. v. Earl Schwartz Co.*, 2021 ND 62, ¶ 19, 958 N.W.2d 128. The party asserting collateral estoppel bars relitigation of an issue in a new proceeding has the burden of establishing the doctrine applies. *Witzke v. City of Bismarck*, 2006 ND 160, ¶ 10, 718 N.W.2d 586. The party must prove four tests are satisfied before a court will find collateral estoppel bars relitigation of an issue involved in an earlier lawsuit. *State v. Lange*, 497 N.W.2d 83, 85 (N.D. 1993). The four tests are:

> (1) Was the issue decided in the prior adjudication identical to the one presented in the action in question?;
> (2) Was there a final judgment on the merits?;
> (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?; and
> (4) Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Norberg v. Norberg*, 2017 ND 14, ¶ 12, 889 N.W.2d 889.

[¶11]  The district court concluded none of the four tests to apply collateral estoppel is satisfied. The court explained, "Plaintiffs did not cite to any case law supporting their claim that an attorney is collaterally estopped from defending against a claim by a former client because of the attorney's failure to make an argument in an underlying action that would have been adverse to the then-client."

4

[¶12]   Regarding the first test, a legal malpractice action does not generally litigate the same cause of action as the underlying civil case in which the malpractice allegedly occurred. *See Heldring v. Lundy Beldecos & Milby, P.C.*, 151 A.3d 634, 644 (Pa. Super. Ct. 2016) ("A legal malpractice action does not litigate the same cause of action as the underlying case in which the malpractice allegedly occurred."); *Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick*, 587 A.2d 1346, 1348 (Pa. 1991) (concluding legal malpractice action "is not barred by the doctrine of collateral estoppel as there are issues in this case that were not litigated in the [underlying] medical malpractice case"); *Cook v. Connolly*, 366 N.W.2d 287, 290-91 (Minn. 1985) (concluding legal malpractice action is not barred by the doctrine of collateral estoppel because the issue in the malpractice action "is not the same issue that was before the trial court"); *Nappe v. Correri & Sapienza*, 181 A.D.2d 664, 665, 580 N.Y.S.2d 465, 466 (1992) (determining in an action to recover damages for legal malpractice that the "defendants failed to meet their burden of establishing that the identical issue was necessarily decided in the underlying action").[1] Although the cited cases rejected defendants' collateral estoppel claims, the principle equally applies to a plaintiff's collateral estoppel claim. Whether Defendants committed legal malpractice, and whether the outcome of the underlying litigation would have been more favorable to Plaintiffs if Defendants had successfully invalidated the Idaho quitclaim deed, are separate and distinct issues from the issues addressed in the underlying litigation.

[¶13]   The second test addresses whether there was a final judgment on the merits. Because the issues determined in the underlying litigation are different from the issues raised in this legal malpractice case, there is no final judgment on the merits of the issues raised in this case.

---

[1] Some courts apply collateral estoppel to bar legal malpractice claims against criminal defense attorneys. *See Clark v. State*, 955 N.W.2d 459, 466-67, n.7 (Iowa 2021) (stating "criminal defense attorneys may use their client's unsuccessful ineffective-assistance claim to bar a subsequent claim for malpractice," and citing cases in footnote); *Rosenberg v. Shostak*, 405 S.W.3d 8, 13 (Mo. Ct. App. 2013) ("Under the so-called 'exoneration rule,' a legal malpractice defendant may successfully invoke collateral estoppel if the plaintiff was convicted of an offense and failed to obtain exoneration by appellate or post-conviction relief, because the adjudication of the plaintiff's guilt precludes him from proving proximate cause."); *Gibson v. Trant*, 58 S.W.3d 103, 114-15 (Tenn. 2001) (citing cases); *Berringer v. Steele*, 758 A.2d 574, 591-93 (Md. Ct. App. 2000) (discussing how jurisdictions address "criminal malpractice" claims, *i.e.*, "legal malpractice arising from a criminal prosecution").

[¶14]   The third test addresses privity. We have explained that "[p]rivity exists when one is so identified in interest with another that the person represents the same legal right." *Hall v. Est. of Hall*, 2020 ND 205, ¶ 18, 950 N.W.2d 168. Privity includes:

> a person who is not technically a party to a judgment, or in privity with him, but who is, nevertheless, connected with it by his interest in the prior litigation and by his right to participate therein, at least where such right is actively exercised by prosecution of the action, employment of counsel, control of the defense, filing of an answer, payment of expenses or costs of the action, the taking of an appeal, or the doing of such other acts as are generally done by parties.

*Hall*, at ¶ 18 (quoting *Ungar v. N.D. State Univ.*, 2006 ND 185, ¶ 12, 721 N.W.2d 16).

[¶15]   "Necessarily," in the present case, "the parties in the two suits are different[.]" *Heldring*, 151 A.3d at 644. The underlying litigation is between Plaintiffs and Joanne Fife, individually and as personal representative of Richard Fife's estate; this litigation is between Plaintiffs and Defendants Andrew Cook, Lukas Andrud, and Ohnstad Twichell, P.C.

[¶16]   Despite Defendants not being parties to the underlying litigation, Plaintiffs argue Defendants are in privity with Plaintiffs because Defendants represented Plaintiffs in the underlying litigation. We reject Plaintiffs' argument.

[¶17]   In *Ammon v. McCloskey*, 655 A.2d 549, 554 (Pa. Super Ct. 1995), the court addressed "whether the defendant lawyer was in privity with the client whom, allegedly, he failed to represent with reasonable care in the prior action." "To state the question, however," the court noted, "is also to answer it." The court explained:

> In the prior action, the lawyer was a professional representative, who owed complete allegiance to the client, but who had no personal interest in the rights being litigated. His interests were not the same as the client, and he was not in privity with him. Therefore, it cannot be said that the lawyer had a full and fair opportunity to litigate in the prior action the reasonableness or the effect of his conduct in such prior action.

*Id.* The court concluded the trial court's holding in the original action, which an appellate court affirmed, "did not prevent the lawyer from defending his conduct fully when he was subsequently sued for legal malpractice." *Id.* Thus, the court held, the lawyer "was not collaterally estopped in that action from litigating fully both the reasonableness and legal

effect of his conduct in the prior action." *Id.*; *cf. Hall*, 2020 ND 205, ¶ 24 ("A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity." (quoting Restatement (Second) of Judgments § 36 (1982))).

[¶18] Similarly, in the underlying litigation, Defendants were professional representatives who owed complete allegiance to Plaintiffs. Defendants had no personal interest in the rights being litigated, Defendants' interests were not the same as Plaintiffs' interests, and Defendants were not in privity with Plaintiffs.

[¶19] Regarding the last test, Defendants did not have a fair opportunity to be heard on the issues in this case in the underlying litigation. Defendants represented Plaintiffs in the underlying litigation; Defendants had no personal interest in the issues litigated in the underlying litigation and could not be heard on the issues in this case, a case which did not even exist at the time of the underlying litigation. *See Heldring*, 151 A.3d at 645 ("[Plaintiff] had no full or fair opportunity to litigate that malpractice issue in the underlying action, since it was in the course of that action that the malpractice allegedly occurred and since [plaintiff's] alleged damages—resulting from uncollectability of the judgment—were not incurred until the underlying action ended.").

[¶20] We conclude the district court did not err in holding collateral estoppel does not apply in this case.

IV

[¶21] Plaintiffs argue the district court erred when it held Marianne Fife's "entire North Dakota intestate estate included only the value of her surface and mineral interest in the real property in North Dakota." They further argue the court erred in concluding the interest in the Idaho marital home would have bypassed probate and would not have been part of the estate valuation. They contend Marianne Fife's North Dakota intestate estate included her interest in the Idaho property, specifically the marital home and her personal property. The court concluded the Idaho property was not part of the North Dakota intestate estate because the Idaho property was community property that passed to Marianne Fife's husband on her death.

[¶22] Plaintiffs' arguments require we determine, as a matter of law, whether the Idaho property was part of Marianne Fife's North Dakota intestate estate under the Uniform Probate Code (UPC) as the UPC existed in 1989, the time of Marianne Fife's death.

7

Statutory interpretation presents a question of law, fully reviewable on appeal. *In re Est. of Hall*, 2019 ND 196, ¶ 8, 931 N.W.2d 482; *In re Est. of Johnson*, 2015 ND 110, ¶ 12, 863 N.W.2d 215. Our primary objective in interpreting a statute is to determine the legislation's intent, as expressed in the statutory language. *Hall*, at ¶ 8; *In re Est. of Brandt*, 2019 ND 87, ¶ 13, 924 N.W.2d 762. We give words their plain, ordinary, and commonly understood meaning, unless they are specifically defined or contrary intention plainly appears. N.D.C.C. § 1-02-02. We construe statutes as a whole, harmonize them to give meaning to related provisions, and interpret them to give effect to all of their provisions. N.D.C.C. § 1-02-07; *Brandt*, at ¶ 13; N.D.C.C. § 1-02-38(2). When a uniform statute is interpreted, we construe it to effectuate its general purpose to make the law uniform in the states which enacted it. N.D.C.C. § 1-02-13; *Hall*, at ¶ 8.

[¶23]  Title 30.1, N.D.C.C., contains the UPC as adopted by North Dakota. Section 30.1-02-01 (UPC 1-301), N.D.C.C., defines the "[t]erritorial application" for title 30.1. In 1989, this section stated, in relevant part:

> Except as otherwise provided in this title, this title applies to:
> 1. The affairs and estates of *decedents . . . domiciled in this state*.
> 2. The property of nonresidents *located in this state* or property coming into the control of a fiduciary which is subject to the laws of this state.

N.D.C.C. § 30.1-02-01(1), (2) (1989) (emphasis added). Significantly, the UPC's territorial application does not include the estates of all decedents; it includes the estates of decedents "domiciled in this state." It is undisputed Marianne Fife was domiciled in Idaho, not North Dakota, at the time of her death. Furthermore, the UPC's territorial application does not include all property of deceased nonresidents; it applies to deceased nonresidents' property "located in this state." It is undisputed Marianne Fife's only property "located in this state" at the time of her death was the surface and mineral interests physically located in North Dakota.

[¶24]  Idaho adopted the UPC prior to 1989. At the time of Marianne Fife's death, the Idaho UPC applied to "the affairs and estates of decedents . . . domiciled in this state[.]" Idaho Code § 15-1-301 (1989). Because Marianne Fife was domiciled in Idaho at the time

8

of her death, Idaho, not North Dakota, law controls disposition of her Idaho estate and property; North Dakota law applies to Marianne Fife's property located in North Dakota.[2]

[¶25]   UPC article II addresses intestate succession. Under both North Dakota and Idaho law, in 1989, UPC 2-101 provided: "Any part of the estate of a decedent not effectively disposed of by his will passes to his *heirs* as prescribed in the following sections" of this title (North Dakota) or code (Idaho). N.D.C.C. § 30.1-04-01 (1989) (emphasis added); Idaho Code § 15-2-101 (1989) (emphasis added). Because Idaho is a "community property" state, Idaho and North Dakota law differed regarding a surviving spouse's intestate share. In 1989, North Dakota law provided the intestate share of the surviving spouse was "the first fifty thousand dollars, plus one-half of the balance of the intestate estate" "[i]f there are surviving issue all of whom are issue of the surviving spouse[.]" N.D.C.C. § 30.1-04-02(3) (1989). However, in 1989, Idaho's intestate succession law distinguished between "separate property" and "community property." Section 15-2-102, Idaho Code (1989), which addresses the surviving spouse's intestate share, provided in relevant part:

> The intestate share of the surviving spouse is as follows:
> (a) As to separate property
>     . . . .
>     (3) if there are surviving issue all of whom are issue of the surviving spouse also, the first fifty thousand dollars ($50,000), plus one-half (1/2) of the balance of the intestate estate; . . . .
> (b) As to community property
>     (1) the one-half (1/2) of community property which belongs to the decedent passes to the surviving spouse.

Under both the applicable North Dakota and Idaho law, the part of the intestate estate not passing to the surviving spouse passed to the issue of the decedent. N.D.C.C. § 30.1-04-03 (1989); Idaho Code § 15-2-103 (1989).

---

[2] If the decedent died not domiciled in North Dakota, under some circumstances North Dakota law deferred to the law of the decedent's domicile at death. *See, e.g.,* N.D.C.C. § 30.1-05-01(2) (1989) (providing surviving souse's right "to take an elective share in property in this state is governed by the law of the decedent's domicile at death"); N.D.C.C. § 30.1-19-03(1)(a) (1989) (providing "claims barred by the nonclaim statute at the decedent's domicile before the first publication for claims in this state are also barred in this state").

[¶26]   Under the plain language of the UPC, "any part of the estate" not disposed of by will passed to Marianne Fife's "heirs" as prescribed in the UPC. N.D.C.C. § 30.1-04-01 (1989); Idaho Code § 15-2-101 (1989). As previously discussed, under the UPC, North Dakota courts had no authority to distribute the Idaho property. N.D.C.C. § 30.1-02-01(2) (1989). Because she was domiciled in Idaho at the time of her death, Idaho law controls distribution of Marianne Fife's Idaho estate. Idaho Code § 15-1-301(1), (2) (1989). Thus, in determining whether Marianne Fife's Idaho property (marital home and personal property) was part of her North Dakota intestate estate, a North Dakota court would apply Idaho law. Under Idaho law, Plaintiffs were not "heirs" of Marianne Fife and would not have received any of her Idaho property.

[¶27]   As discussed, the Idaho UPC statutes provided for the intestate succession of "community property" and "separate property." Under Idaho Code § 15-2-102 (1989), the surviving spouse took the decedent's half of the community property and, if there were surviving issue of the surviving spouse, took the first $50,000, plus one-half of the balance of the intestate estate. *See* Restatement (Third) of Property (Wills & Don. Trans.) § 2.2 (Intestate Share of Surviving Spouse) (1999) ("The Original and Revised Uniform Probate Code have a special section for community-property states. Both versions provide that the surviving spouse takes all of the decedent's half of the community-property but takes the same share of the decedent's separate property as the spouse would take in a non-community-property state . . . .").

[¶28]   The Idaho Supreme Court has repeatedly construed the versions of Idaho Code §§ 15-2-102 and 15-2-103 in effect at that time of Marianne Fife's death. In 1984, the court stated the Idaho law of intestate succession in effect in 1980 provided "that the surviving spouse receives all of the community property and the first $50,000, and one-half of the remaining balance, of the decedent spouse's separate property." *Schiess v. Bates*, 693 P.2d 440, 442 (Idaho 1984), *opinion reinstated*, 704 P.2d 342 (Idaho 1985). "Surviving children," the court explained, "only become 'heirs' of the decedent spouse if the decedent's spouse leaves separate property with a value in excess of $50,000." *Id.* Noting there was no allegation the decedent "owned separate property with a value in excess of $50,000," the court wrote "there is nothing to suggest or indicate that [decedent's] children are 'heirs.'" *Id.* at 443.

[¶29]   Two years later, using almost identical language, the Idaho Supreme Court held the statutes "provide that a surviving spouse receive all of the community property and the first $50,000, and one-half of the remaining balance of the decedent's separate property.

10

Surviving children only become 'heirs' of the decedent if the decedent leaves separate property with a value in excess of $50,000." *Barringer v. State*, 727 P.2d 1222, 1241 (Idaho 1986). Applying the law to the facts of the case, the court held the plaintiff was "not an heir" under the applicable law because there was no allegation the decedent "left separate property in the amount of $50,000 or more[.]" *Id.*

[¶30]  Similarly, in 1983, the Idaho Supreme Court stated, "I.C. § 15-2-102 (in effect since 1971) declares that if the intestate left a surviving spouse, the surviving spouse will receive all of the community property, and the first $50,000 and one-half the remaining balance of the separate property." *Everett v. Trunnell*, 673 P.2d 387, 390 (Idaho 1983).

[¶31]  Three years before the *Everett* decision, in *In re Freeburn's Est.*, 620 P.2d 773 (Idaho 1980), the Idaho Supreme Court rejected the argument the decedent's children had an interest in the decedent's community property when there was a surviving spouse. It wrote: "It is axiomatic that upon the decedent's death, title to the community property vested in the administratrix as surviving spouse." *Id.* at 776. Seven years earlier, in *In re Reichert*, 516 P.2d 704, 706 (Idaho 1973), the court explained:

> In Idaho all property acquired during a marriage except 'separate property' (that acquired by gift, bequest, devise or descent or that acquired with proceeds of separate property or the earnings of a wife living separate from her husband, I.C. s 32-903, I.C. s 32-909) are community property. I.C. s 32-906. If either husband or wife dies intestate, under either the uniform probate code (I.C. s 15-2-102) or the prior law of intestate succession (I.S. s 14-113), the surviving spouse takes all community property.

[¶32]  These Idaho cases establish the application of the Idaho intestate succession laws in effect at the time of Marianne Fife's death. Under the applicable Idaho law, Richard Fife received all the community property, the first $50,000 of Marianne Fife's separate property, and then one-half of Marianne Fife's remaining separate property. Under Idaho law, Plaintiffs would not be "heirs" of Marianne Fife unless the value of her separate property exceeded $50,000.

[¶33]  Idaho Code § 32-903 defines "[s]eparate property." At the time of Marianne Fife's death, section 32-903 provided:

> All property of either the husband or the wife owned by him or her before marriage, and that acquired afterward by either by gift, bequest, devise or descent, or that which either he or she shall acquire with the proceeds of his

11

or her separate property, by way of moneys or other property, shall remain his or her sole and separate property.

Idaho Code § 32-903 (1989). Generally, "[a]ll other property acquired after marriage by either husband or wife is community property." Idaho Code § 32-906(1) (1989).

[¶34] It is undisputed the Idaho house was community property. Thus, upon Marianne Fife's death, title to the house passed to Richard Fife as surviving spouse. Under the applicable Idaho law, a court could not consider the Idaho house when determining whether Marianne Fife's separate property had a value in excess of $50,000, the amount required for Plaintiffs to be Marianne Fife's heirs.

[¶35] In the underlying litigation, Plaintiffs asserted Marianne Fife's personal property at the time of her death was valued around $47,000. The district court found Plaintiffs failed to prove the value of Marianne Fife's personal property. Specifically, the court wrote:

> In their testimony and exhibits, the Plaintiffs offered no evidence to support Marianne's ownership of any of the items described in Exhibit 20 [the list of Marianne Fife's purported personal property].
> . . . .
> The Plaintiffs failed to offer any evidence supporting Exhibit 20, and therefore failed to prove that any item listed was owned by Marianne at the time of her death, or that any values assigned to these items by the Plaintiffs are accurate. If the Court were to set aside this fact and take Exhibit 20 at face value, then all of the items listed (plus the sterling silver set not listed but testified to by Anne [Fahey]), would total $46,575.00.

*Fahey*, 2017 ND 200, ¶ 16. However, the relevant issue under Idaho law is not the value of Marianne Fife's "personal property"; it is the value of her "separate property."

[¶36] The complaint in this action did not allege Marianne Fife had separate property in Idaho. In pleadings, Plaintiffs asserted the North Dakota property was Marianne Fife's "sole and separate property." Plaintiffs did not draw this Court's attention to evidence in the record indicating Marianne Fife's Idaho personal property was separate property as opposed to community property. As we have repeatedly explained:

> A party resisting a motion for summary judgment has the responsibility of presenting competent admissible evidence by affidavit or other comparable means, and, if appropriate, drawing the court's attention to evidence in the

record . . . raising a material factual issue, or from which the court may draw an inference creating a material factual issue.

*Larson Latham Huettl LLP v. Burckhard*, 2022 ND 230, ¶ 26, 983 N.W.2d 169 (quoting *First Nat. Bank of Hettinger v. Clark*, 332 N.W.2d 264, 267 (N.D. 1983)). If Marianne Fife's personal property was community property, upon her death, the property went to Richard Fife as surviving spouse and, under the applicable Idaho law, could not be considered when determining whether Marianne Fife's separate property had a value in excess of $50,000.

[¶37]  This Court is not obligated to search the record in an attempt to find evidence to support Plaintiffs' position. *See Earnest v. Garcia*, 1999 ND 196, ¶ 10, 601 N.W.2d 260 ("Judges, whether trial or appellate, are not ferrets, obligated to engage in unassisted searches of the record for evidence to support a litigant's position."). However, a review of the record demonstrates Plaintiffs do not assert all of Marianne Fife's personal property was separate property. In their post-trial brief in the underlying litigation, Plaintiffs wrote, "Marianne owned numerous items of personal property, either by herself or as a half-owner with Richard." Property Marianne Fife owned with Richard Fife was community property, not separate property.

[¶38]  During the underlying trial, Plaintiff Anne Fahey testified regarding Exhibit 20, a list of "various items of personal property" she claimed belonged to Marianne Fife. Anne Fahey prepared or helped prepare the list. Exhibit 20 listed two vehicles; a pool table; furniture, including a washer, dryer, and upright freezer; antiques; jewelry; tools; and miscellaneous items. The following exchange occurred during Anne Fahey's testimony:

> Your parents had been married in—for about—over 35 years, by the time of your mother's death, weren't they?
> A. Correct.
> Q. Okay. And during all that time, are you telling the Court now, that your father had no interest in any of these items that you have listed here?
> A. I didn't say that.
> Q. Okay, well, what are you saying then?
> A. I'm saying these were all of the things that were in my parents' home, that my mother was—her part of the property.
> Q. Okay. That's fine. So then, it would be, at least a true statement to say, that your father would've had, at least, a half interest in these items too? They weren't all your mother's.
> A. True.

When asked about ownership of the "furniture and stuff," Anne Fahey testified, "I'm just saying, that was in their home, so—." Anne Fahey was then asked, "And that, basically, would apply to them. Basically all the items listed on Exhibit 20. Is that correct?" She responded, "Yes. Except, the only thing that isn't there, is her sterling silver." She testified she believed the set of sterling silver was probably worth close to $2,000.

[¶39] Later, when asked whether there were items on the list Marianne Fife owned individually, Anne Fahey testified Marianne Fife purchased the listed antiques with her own money. She also testified her grandfather made the antique hand tools on the list and Marianne Fife owned them.

[¶40] Plaintiff Richard Fife testified Richard and Marianne Fife bought the pool table.

[¶41] Plaintiff Timothy Fife testified he considered the antique furniture to belong to Marianne Fife. He mentioned a diamond ring during his testimony. However, there was no testimony in the record regarding who purchased the ring, when it was purchased, with what money it was purchased, or its value in 1989. Timothy Fife also testified he believed his father had an interest in some of the items on the list, but not all of them. He did not indicate which items he believed belonged to Marianne Fife. He testified Richard Fife purchased the vehicles.

[¶42] Based on this evidence, giving Plaintiffs the benefit of all favorable inferences which can reasonably be drawn from the record, *Meuchel v. MR Properties LLC*, 2024 ND 107, ¶ 10, the property arguably identified as Marianne Fife's separate property are the antiques, antique tools, and the sterling silver set. In the underlying trial, Plaintiffs claimed the total value of the antiques was $4,600, the total value of the tools was $5,700, and the value of the sterling silver set was $2,000. Thus, at most, Plaintiffs provided evidence from which we can infer Marianne Fife's separate property in Idaho was valued at $12,300. In the underlying litigation, the "district court placed a $4,800 date of death value on Marianne Fife's minerals on the basis of an expert appraisal[.]" *Fahey*, 2017 ND 200, ¶ 15. Adding in the estimated values for the surface estate of the North Dakota property, the court found the total value of the North Dakota property to be between $8,256.00 and $13,600.00. Adding the highest value of the North Dakota property ($13,600.00) with the arguable possible value of Marianne Fife's separate property in Idaho ($12,300), brings Marianne Fife's total separate property value to $25,900, far below the $50,000 amount required under Idaho law for Plaintiffs to be Marianne Fife's heirs.

[¶43]   Plaintiffs could argue this Court should not limit its consideration to the evidence presented in the underlying litigation since they allege Defendants committed malpractice by not presenting more evidence regarding the value of Marianne Fife's personal property. However, the Court's analysis is limited to the evidence presented in the underlying litigation because that is the evidence Plaintiffs presented in this litigation. Plaintiffs did not point to, and this Court did not find, any additional evidence in the record regarding the value of Marianne Fife's Idaho property. Had Plaintiffs wanted the district court and this Court to consider additional evidence regarding the value of Marianne Fife's separate property in Idaho, they could have submitted it in response to Defendants' motion. N.D.R.Civ.P. 56(e)(2); *Larson Latham Huettl LLP*, 2022 ND 230, ¶ 26. They did not.

[¶44]   To be heirs under the applicable Idaho UPC laws, Plaintiffs had to create a genuine issue of material fact that Marianne Fife had separate property valued over $50,000. Even after giving Plaintiffs the benefit of all favorable inferences we can reasonably draw from the record, Plaintiffs failed to create a genuine issue of material fact that Marianne Fife's separate property had a value over $50,000 at the time of her death. Thus, under Idaho law, all of Marianne Fife's Idaho property passed to Richard Fife and Plaintiffs were not heirs.

[¶45]   Because Plaintiffs were not heirs entitled to inherit any of Marianne Fife's Idaho property, the district court properly limited the value of Marianne Fife's North Dakota intestate estate to the value of her North Dakota surface and mineral interests at the time of her death, which was under $50,000. Because Richard Fife's intestate share of Marianne Fife's intestate estate included the first $50,000, and her intestate estate did not exceed $50,000, the district court correctly concluded Plaintiffs have not demonstrated a genuine issue of material fact exists regarding whether the underlying litigation would have terminated more favorably to Plaintiffs had Defendants taken the actions Plaintiffs identified.[3]

---

[3] Plaintiffs retained Idaho counsel to explore potential causes of action to challenge the deed to the Idaho marital home. In addition to expressing concerns regarding the statutes of limitation, Idaho counsel wrote "unwinding the deed on the house does not appear to achieve any objective." He explained that even if the deed is unwound, the house "becomes part of Marianne's estate and is inherited in full by Richard. . . . Thus, obtaining a declaratory judgment in Idaho that the quitclaim deed on the house is invalid does not appear to accomplish anything that is helpful to the North Dakota action."

## V

[¶46] Plaintiffs argue the district court erred when it concluded a cause of action for fraud and undue influence had no value to Marianne Fife's estate. They assert that a cause of action for fraud and undue influence would not have been community property, would not have been excluded from the estate, and that the potential cause of action has value. *See Reinholdt v. N.D. Dep't of Human Servs.*, 2009 ND 17, ¶¶ 13-16, 760 N.W.2d 101. They assert Defendants' failure to develop and present that litigation strategy in the underlying litigation is malpractice and presents a question of fact.

[¶47] As determined above, the Idaho home would not have been part of Marianne Fife's North Dakota intestate estate because it was community property and would have passed to Richard Fife as a matter of law, even if Marianne Fife had never executed the Idaho quitclaim deed. Thus, the district court correctly concluded the purported cause of action had no value with regard to the North Dakota "intestate estate." Therefore, Defendants alleged failure to challenge the Idaho quitclaim deed's validity and argue Marianne Fife's estate had a resulting cause of action against Richard Fife did not proximately cause Plaintiffs any damages.

## VI

[¶48] We have considered Plaintiffs' remaining arguments and conclude they are not necessary to our decision or are without merit. We affirm the judgment.

[¶49] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr

16